**UNITED STATES of America, and Robert Beisner, Revenue Agent of The Internal Revenue Service, Petitioners-Appellants,**

v.

**George E. FLAGG, Respondent-Appellee.**

**No. 80–1018.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 9, 1980.

Decided Nov. 13, 1980.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, James A. Riedy, Attys., Tax Division, Dept. of Justice, Washington, D. C., Carleton D. Powell, Tax Division, Dept. of Justice, Washington, D. C., argued for petitioners-appellants; Roxanne Barton Conlin, U. S. Atty., Des Moines, Iowa, of counsel.

James R. Cook, Des Moines, Iowa, for respondent-appellee.

Before LAY, Chief Judge, GIBSON, Senior Circuit Judge, and HEANEY, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The United States appeals the decision of the District Court denying enforcement of an Internal Revenue Service (IRS) summons issued to George Flagg. This case involves the question of whether the IRS has statutory power under 26 U.S.C. § 7602 (1976) to issue a summons to an identified taxpayer to determine the correctness of his return, in order that the data developed from the audit may be used for research purposes in the IRS's Taxpayer Compliance Measurement Program (TCMP). We hold that the IRS does have statutory authority to issue the summons. We therefore reverse the District Court and remand with instructions to enforce the summons.

I.

On or about April 5, 1978, George Flagg, an attorney, was contacted by Robert Beisner, a revenue agent for the IRS. Beisner informed Flagg that his 1976 tax return would be audited since it had been selected for the TCMP. Flagg objected to participation in the program. In subsequent meetings with the IRS, Flagg refused to participate in the examination of his return. On September 27, 1978, the IRS issued a summons to Flagg to appear before Beisner with records to substantiate his 1976 return. Flagg refused to comply. On March 6, 1978, the IRS filed a petition for enforcement in the District Court. On November 8, 1979, the District Court, after hearings before a magistrate and the court, denied enforcement of the summons. This appeal followed.

II.

The Taxpayer Compliance Measurement Program is designed to measure and evaluate how taxpayers comply with the Internal Revenue Code reporting requirements. Under this program, a number of taxpayers are randomly selected by a computer. The IRS then makes an extensive examination of these taxpayers' returns in order to ascertain the correctness of their returns. The examinations are in-depth, and more

extensive than ordinary audits. The results of these audits, in addition to being used in accordance with normal IRS enforcement procedures (such as providing a refund for excess payments or assessing a deficiency for taxes due) are used as data for the TCMP research program, the purpose of which is to improve the overall efficiency of the administration of the income tax laws.

The TCMP is a quality control program which attempts to pinpoint those areas of the tax law where errors will be most frequently made in filing a return. In order to implement the TCMP an unbiased, random sample of the correctness of several thousand individual taxpayers' returns is needed to form the proper statistical data base. The IRS, by extensively auditing these returns, can predict which areas of the tax law millions of United States taxpayers may be having difficulty complying with. In so doing, the IRS can obviate the need to engage in costly, extensive examinations of taxpayers in areas of the tax law where the TCMP has shown that taxpayers encounter little difficulty. The TCMP thus aids the IRS in determining those areas of tax administration into which it should concentrate its limited enforcement resources. Both the taxpayers and the IRS gain from the efficiencies resulting from the TCMP.

### III.

George Flagg was one of those individuals whose 1976 tax returns were selected to be examined for correctness in order that the data obtained from the audits might be included in the TCMP. On or about April 5, 1978, Flagg was first contacted by Robert Beisner, the revenue agent for the IRS. There is considerable dispute over whether Beisner informed Flagg during this and subsequent conversations that his return was to be audited to determine its correctness or to provide data for the TCMP research project. Beisner himself testified at the magistrate's hearing in a somewhat conflicting manner on this question. At the hearing before the District Court judge, however, Flagg's attorney addressed the conflict or dichotomy in Beisner's testimony:

The dichotomy that you're [the district court judge] concerned about, sir, Mr. Beisner is correct in both instances. The sole purpose [of the examination] was the TCMP. But his [Beisner's] sole purpose as the lower echelon of government was merely to ascertain the correctness of tax liability previously paid by Mr. Flagg, so that this could be put into the TCM Program. * * * It was an investigation, an audit to put the information into the TCM Program.

As a secondary purpose, obviously, if they [the IRS] found anything wrong, they would correct it. * * *

So it's not an either/or; but Mr. [Beisner] is not confusing himself when he testifies both ways. The sole purpose of the TCM Program, his function within that program, was to audit and determine whether or not Mr. Flagg's return was correct.

The attorney correctly states the factual circumstances attendant to the attempted examination of Flagg's return. We find on reviewing the record: (1) IRS agent Beisner was attempting to examine Flagg's return to determine its correctness; (2) Flagg's return was randomly selected by the IRS for examination to determine its correctness primarily in order to provide data for the TCMP research program.

In our reading of the District Court's opinion, that court did not come to a contrary conclusion. The District Court, rather, focused on the conclusion that "the investigation of Mr. Flagg was [not] in any way connected with criminal activity or conduct, or that the IRS had <u>any valid reason for a civil tax determination</u> or for collection purposes, * * *." (Emphasis added). The underscored conclusion is a finding of law by the District Court that examination of Flagg's return to determine its correctness, primarily in order to provide data for the TCMP, is not "a valid reason for a civil tax determination" under 26 U.S.C. § 7602. *See generally United States v. LaSalle National Bank*, 437 U.S. 298, 319 n.21, 98 S.Ct. 2357, 2368 n.21, 57 L.Ed.2d 221 (1978). We disagree.

## IV.

### A.

The relevant statutory framework for this case can be found in sections 7601 and 7602 of the Internal Revenue Code of 1954. Section 7601 imposes a statutory duty on the Secretary to canvass the accuracy of tax returns filed and the liability of those who made or should make a return. It reads:

> Section 7601. Canvass of districts for taxable persons and objects.
>
> (a) General rule.
>
> The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

Section 7602 gives statutory procedures for checking returns for errors and omissions. It reads:

> Section 7602. Examination of books and witnesses.
>
> For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax * * * or collecting any such liability, the Secretary or his delegate is authorized–
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or

his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

■ Flagg does not contend that the IRS lacks statutory authority under section 7601 to set up the TCMP program. *See United States v. Humble Oil & Refining Co.*, 488 F.2d 953, 956, 962 (5th Cir. 1974), *vacated and remanded*, 421 U.S. 943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975), *aff'd per curiam*, 518 F.2d 747 (5th Cir. 1975). Section 7601 "flatly imposes upon the Secretary [of the Treasury] the duty to canvass and to inquire." *Donaldson v. United States*, 400 U.S. 517, 523, 91 S.Ct. 534, 538, 27 L.Ed.2d 580 (1971). Thus, section 7601 gives the Internal Revenue Service a broad mandate to investigate and audit. *United States v. Bisceglia*, 420 U.S. 141, 145, 95 S.Ct. 915, 918, 43 L.Ed.2d 88 (1975); *see United States v. Euge*, 444 U.S. 707, 716, 100 S.Ct. 874, 880, 63 L.Ed.2d 141 (1980).

■ Flagg contends the IRS is without statutory authority to effectuate the purpose of section 7601 through the issuance of a summons.[1] Section 7602 provides the statutory power to the IRS to summon the taxpayer to appear before it with "such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to" determining "the correctness of any return." This investigative authority "is not limited to situations in which there is probable cause, in the traditional sense, to believe that a violation of the tax law exists. *United States v. Powell*, 379 U.S. 48 [85 S.Ct. 248, 13 L.Ed.2d 112] (1964)." *United States v. Bisceglia, supra*, 420 U.S. at 146, 95 S.Ct. at 918–9.

---

1. In his brief, Flagg argues that the Government is asserting statutory authority under section 7602 for the first time on appeal. The District Court record and its opinion clearly reveal otherwise.

In construing the summons authority claimed under section 7602, judicial deference to congressional intent requires that if the claimed authority is necessary for the effective performance of the congressionally imposed responsibilities to enforce the tax laws, "that authority should be upheld absent express statutory prohibition or substantial countervailing policies." .*United States v. Euge, supra,* 444 U.S. at 711, 100 S.Ct. at 878; *e. g., United States v. Bisceglia, supra,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88; *Donaldson v. United States, supra,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580.

Applying these principles, the IRS clearly has broad authority to summon Flagg to appear to ascertain the correctness of his return. Furthermore, the section 7601 canvassing power of the IRS would be frustrated if the section 7602 summons authority were construed to be subject to a limitation against such examinations in cases where the primary purpose was to gain research data. *See United States v. Euge, supra,* 444 U.S. at 715, 100 S.Ct. at 880, *quoting United States v. Bisceglia, supra,* 420 U.S. at 150, 95 S.Ct. at 920-1.

The TCMP serves the legitimate purpose of increasing the effectiveness of the IRS's enforcement powers. The program also substantially reduces the burden on many taxpayers whose returns may be subject to audit. The results of the TCMP predict which areas of the tax law are more difficult to comply with, thereby reducing the time spent in auditing those areas in the least need of external enforcement. Our tax system is based on the principle of voluntary compliance by the individual taxpayer; the TCMP furthers that principle.

### B.

The finding that the IRS has statutory authority under the summons power to ascertain the correctness of Flagg's return in order to primarily provide data for the TCMP research program is subject to the limitation of a good faith exercise. In *United States v. Powell,* 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112, *quoted in United States v. LaSalle National Bank,* 437 U.S. 298, 313-14, 98 S.Ct. 2357, 2366, 57 L.Ed.2d 221 (1978), the Supreme Court outlined several elements of a good-faith exercise:

> [The Service] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed * * *. [A] court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation. [Footnote omitted.]

In Flagg's case we have already found that the IRS was examining Flagg's return in order to ascertain its correctness and thereby obtain information for its canvassing activities in the form of the TCMP research activity. This is clearly a legitimate purpose under sections 7601 and 7602. Flagg does not allege that the summons was issued for harassment, criminal enforcement, or any other potentially illegitimate purpose.[2] Accordingly, we find the IRS has met its good-faith obligation in the issuance of the summons. *See United States v. Powell, supra,* 379 U.S. at 56-58, 85 S.Ct. at 254-255; 26 U.S.C. § 7605(b) (1976).

### V.

Flagg argues extensively in his brief that a decision of the United States Court of Appeals for the Fifth Circuit should be controlling in this case. *United States v. Humble Oil & Refining Co.,* 488 F.2d 953 (5th Cir. 1974), *vacated and remanded,* 421 U.S.

---

**2.** Those opposing enforcement of a summons bear the burden "to disprove the actual existence of a valid civil tax determination or correction purpose by the Service." *United States v. LaSalle National Bank, supra,* 437 U.S. at 316, 98 S.Ct. at 2367.

943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975) (in light of *United States v. Bisceglia*, 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975)), *aff'd per curiam* 518 F.2d 747 (5th Cir. 1975). The District Court also relied upon this decision. *See also United States v. First National Bank in Dallas*, 468 F.Supp. 415 (N.D.Tex.1979), *appeal docketed* (5th Cir. 1979). We find that *Humble Oil*, by its own wording, is limited to a situation not involved herein and therefore is inapplicable to the present case.

In *Humble Oil* the IRS had issued a "John Doe" summons to the oil company in order to discover the identities of all lessors of mineral leases surrendered by the company in 1970. The summons was not issued to facilitate any ongoing investigation of any particular taxpayer, either of Humble or of its lessors. The Fifth Circuit denied enforcement of the summons, despite finding that the IRS's investigation was a valid IRS function under the section 7601 canvassing power. In denying enforcement, the court focused upon the absence of any particularized investigation of an individual taxpayer, which the court found to be a prerequisite under section 7602. The court stated that

> the canvass power can be employed [by the IRS] rather cavalierly while the summons power can be utilized only when IRS scrutiny of a taxpayer or a group thereof becomes particularized or focused. We agree with the district court that '[t]here must be some nexus between information sought and a specific investigation of specific individuals before the government can compel third parties, at their own expense, to give information to the Internal Revenue Service.' *United States v. Humble Oil & Refining Company*, 346 F.Supp. 944, 947 (S.D.Tex.1972). Before a section 7602 summons may issue, the IRS must have traversed the data gathering stage and initiated an investigation.

*United States v. Humble Oil & Refining Co., supra*, 488 F.2d at 960.

The court in *Humble Oil* reiterated this factual distinction no fewer than three times in its opinions. *Id.* at 956, 962–63;

518 F.2d at 748. The *Humble Oil* decision, therefore, does not stand for the broad proposition "that the Internal Revenue Service is not allowed by law to examine returns for the purpose of carrying on research" as contended by the District Court in *United States v. First National Bank in Dallas, supra*, 468 F.Supp. at 416. In Flagg's case, the IRS was attempting to conduct a lawful examination of his individual return. The authority to issue a summons to determine the correctness of an individual return fits squarely within the statutory provision of section 7602. The IRS in this instance was attempting to determine the correctness of Flagg's return. By determining the accuracy or inaccuracy of Flagg's return and others selected in a similar manner, a proper statistical base can be compiled from which relevant information may be gained. This information can in turn be used to increase the efficiency of the IRS and ultimately lessen the burden of complying with the tax laws and related regulations.

Reversed and remanded with instructions to enforce the summons.