UNITED STATES of America and Octavio Saldana, Plaintiffs,

United States of America, Plaintiff–Appellant,

v.

FIRST NATIONAL BANK IN DALLAS and Bank of the Southwest, Defendants–Appellees,

Dr. James A. Yeoham, etc. et al., Intervenors–Appellees.

No. 79–2420.

United States Court of Appeals, Fifth Circuit. Unit A

Jan. 26, 1981.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Carleton D. Powell, James A. Riedy, Tax Div., Dept. of Justice, Washington, D.C., for plaintiff–appellant.

Leon Crum, Dallas, Tex., Richard O. Werlein, College Station, Tex., for Yeoham, et al.

Dwight R. Mann, Philip Stewart, Dallas, Tex., for First Nat'l Bank in Dallas.

Kenneth M. Stohner, Dallas, Tex., for Bank of the Southwest.

Before INGRAHAM, GEE and TATE, Circuit Judges.

TATE, Circuit Judge:

The United States (Internal Revenue Service) appeals from a decision of the district court which denied enforcement of four Internal Revenue Service (IRS) summonses issued to three banks. 468 F.Supp. 415 (N.D.Tex.1979). The stated purpose of these summonses, sought under sections 7402(b) and 7604(a) of the Internal Revenue Code of 1954, was to facilitate an audit of the 1976 joint tax return of Dr. and Mrs. James A. Yeoham. However, as the evidentiary hearing showed, the return was selected for audit to develop data to be used for research in the Internal Revenue Service's Taxpayer Compliance Measurement Program (TCMP). Because we find that the IRS has the statutory power under 26 U.S.C. § 7602 to issue summonses where one good faith purpose is to ascertain the correctness of specific tax returns, we reverse the decision of the district court. (In rejecting identical contentions by taxpayers, the Eighth Circuit has recently reached the same conclusion as we do. *United States v. Flagg,* 634 F.2d 1087, (8th Cir., 1980).)

*Context Facts*

The IRS selected the Yeohams' 1976 tax return for audit pursuant to the Taxpayer Compliance Measurement Program, which is a research program primarily designed to measure accuracy in filing federal tax returns. As an integral facet of this program, the taxpayers' return is scrutinized for potential errors. If the tax liability is ascertained to be either understated or overstated on the return, the respective collection or repayment is then undertaken.[1]

In conducting its investigation, the IRS issued four summonses to the three defendant banks for their records pertaining to the accounts of Dr. James A. Yeoham and Mrs. Velma Yeoham (taxpayers on joint return), their children, and Dr. James A. Yeoham, a Professional Association. In the opinion of the IRS agent conducting the audit, these records were needed to assure a thorough investigation.

Dr. Yeoham directed the three banks not to comply with the summonses, as is permissible under section 7609(b)(2) of the Internal Revenue Code of 1954. The IRS thereafter, through its agent Saldana, instituted proceedings in district court to seek enforcement of the summonses.

---

1. Additionally, if the investigating agent believes that fraudulent entries were made on the tax return, it is then referred to the Criminal Investigation Division.

The district court refused to enforce the summonses. It concluded that the IRS had exceeded its statutory authority by issuing summonses pursuant to a TCMP audit, an audit conducted "primarily for research purposes." In reaching its conclusion, the district court relied principally on this court's holding in *United States v. Humble Oil & Refining Co.*, 488 F.2d 953 (5th Cir. 1974), *vacated and remanded*, 421 U.S. 943, 95 S.Ct. 1670, 44 L.Ed.2d 97 (1975), *aff'd. per curiam*, 518 F.2d 747 (5th Cir. 1975). The district court found that *Humble* stood for the proposition "that the IRS is not allowed by law to examine returns for the purpose of carrying on research." 468 F.Supp. at 416. In denying the enforcement of the summonses, the district court opined: "As Dr. Yeoham's return was selected primarily for research purposes, this court is compelled to conclude that *Humble* is controlling . . . ." Id. at 417.

We disagree.

Before noting the reasons for the non·application of the *Humble* holding to the differing factual circumstances before us, we will briefly summarize (1) the statutory framework under which the IRS is allowed to audit taxpayers' returns and (2) the nature of the Taxpayer's Compliance Measurement Program.

*Authority to Audit*

Section 7601(a) of the Internal Revenue Code of 1954 gives the IRS the authority to ascertain the tax liability of all persons who may be liable to pay any Internal Revenue tax. This section reads as follows:

> The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.

Section 7602 gives the IRS a more specific grant of authority. By it, the IRS is empowered to examine records and witnesses (secured by summonses, if necessary) for the purpose of determining the correctness of returns and the liability of those who fail to make returns. In essence, section 7602 gives the IRS the necessary tools to effect the broad mandate of section 7601. Section 7602 reads as follows:

> *For the purpose of ascertaining the correctness of any return,* making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability, the Secretary or his delegate is authorized
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
>
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
>
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry. (Italics ours.)

*Taxpayers Compliance Measurement Program*

The enforceability of an IRS summons pursuant to a TCMP audit was the subject of a recent opinion in *United States v. Flagg*, 634 F.2d 1087 (8th Cir. 1980). There the court gave the following description of the TCMP:

> The Taxpayer Compliance Measurement Program is designed to measure and evaluate how taxpayers comply with the Internal Revenue Code reporting requirements. Under this program, a number of taxpayers are randomly selected

by computer. The IRS then makes an extensive examination of these taxpayers' returns in order to ascertain the correctness of their returns. The examinations are in–depth and more extensive than ordinary audits. The results of these audits, in addition to being used in the courts with normal IRS enforcement procedures (such as providing a refund for excess payments or assessing a deficiency for taxes due) are used as data for the TCMP research program, the purpose of which is to improve the overall efficiency of the administration of the income tax law.

The TCMP is a quality control program which attempts to pinpoint those areas of the tax law where errors will be most frequently made in filing a return. In order to implement the TCMP, an unbiased, random sample of the correctness of several thousand individual taxpayers' returns is needed to form the proper statistical data base. The IRS, by extensively auditing these returns, can predict which areas of the tax law millions of United States taxpayers may be having difficulty complying with. In so doing, the IRS can obviate the need to engage in costly, extensive examinations of taxpayers in areas of the tax law where the TCMP has shown that taxpayers encounter little difficulty. The TCMP thus aids the IRS is determining those areas of tax administration into which it should concentrate its limited enforcement resources. Both the taxpayers and the IRS gain from the efficiencies resulting from the TCMP.

*Id.* at 1088–1089.

As in *Flagg*, the taxpayers do not challenge the authority of the IRS pursuant to section 7601 to establish the TCMP, nor could they. *Id.* at 1090.

**2.** In *Carter*, this court was faced with an analogous situation to that before us now. There, the IRS had issued a summons pursuant to the Tax Preparers Project, a research program designed to check for fraudulent tax preparers. In distinguishing *Humble*, the *Carter* court stated:

In *Humble Oil* there was an *investigation* for the purpose of discovering criminal activi-

## I.

The taxpayers contend (and the district court so held) that summonses should not be enforced when the IRS investigation is being conducted *primarily* for research purposes. Nevertheless, the district court implicitly recognized that the IRS may conduct research in its effort to effectuate the purposes of Sections 7601 and 7602. Indeed, this circuit has already recognized that research is a legitimate tool for the IRS to utilize in carrying out its broad mandate to both investigate and audit. *United States v. Humble Oil & Refining Company, supra; United States v. Carter*, 489 F.2d 413 (5th Cir. 1973), rehearing denied, 504 F.2d 428 (5th Cir. 1974).[2]

As was stated earlier, the district court in the present case based its holding on this court's decision in *United States v. Humble Oil & Refining Company, supra.* There, the IRS had issued a "John Doe" summons to Humble Oil & Refining Company directing it to produce records for 1970 pertaining to mineral leases surrendered during the year. The information sought by the IRS was needed for "research" in the local industry to measure tax compliance and then to take corrective action, if necessary. At the time the summons was issued to Humble, the IRS had not instigated an investigation of any of Humble's lessors.

This court ruled that, while section 7601 granted the IRS wide latitude to make general inquiries concerning all taxpayers, including conducting the type of research then in question, the IRS's authority to issue summonses under section 7602 was more limited. Absent an investigation of specific taxpayers, the IRS was found to lack the authority to issue summonses under section 7602.

ty. In *Carter* there was *research*, not so much to unearth criminal activity on the part of the taxpayer or even the tax preparer, but more to protect the consumer and, incidentally, to ensure that the United States received all of the funds it was entitled to receive.

504 F.2d at 429.

The United States Supreme Court granted the IRS's petition for certiorari, vacated the judgment and remanded *Humble* for further consideration, in light of *United States v. Bisceglia,* 420 U.S. 141, 142, 95 S.Ct. 915, 917, 43 L.Ed.2d 88 (1975). In *Bisceglia,* the Supreme Court found that "John Doe" summonses were permissible in aid of a particularized investigation,[3] carefully noting that the section 7602 summons power should not be used to conduct "fishing expeditions." 95 S.Ct. at 921.

On remand, this court distinguished the "John Doe" summons in *Humble* from that in *Bisceglia,* noting that the summons in *Humble* had not been issued to facilitate any ongoing, particularized investigation. 518 F.2d at 748. Furthermore, this court concluded: "[T]he information [on the lessors] was sought from Humble to expedite research on an IRS project concerning compliance with the lease restoration requirements of the Internal Revenue Service. An adjustment of tax liability may have incidentally resulted from the project, but the primary purpose of the project was research." 518 F.2d at 748.

■■■■■ In the instant case, the lower court apparently read the above statement in *Humble* to mean that the summons authority granted by section 7602 could not be used if the investigation was conducted primarily for research purposes,[4] even though one of the purposes of the investigation was to ascertain the tax liability of a particular taxpayer. The district court misinterpreted our decision in *Humble.* We hold, as we indicated in *Humble,*[5] that information obtained pursuant to a summons issued under section 7602 may be used for research purposes if the summons is issued in aid of an investigation of the tax liabilities of a specific taxpayer or of an unknown taxpayer where there is an ongoing, particularized investigation. See Note 3, *supra.*

The essence of the *Humble* holding, thus, was not that a summons could not be enforced where the investigation of a taxpayer's return was conducted primarily for research, but rather was that a particularized investigation (based on specific facts or specific taxpayers) was there non–existent. Contrasted to the facts before us, there is such an ongoing investigation that had been instigated by the IRS with at least one purpose being to ascertain the correctness of the defendant taxpayers' 1976 return, a

**3.** The Supreme Court in *Bisceglia* was confronted with determining the enforceability of a "John Doe" summons issued by the IRS to a bank to discover the identity of a person who had deposited 400 deteriorated $100 bills with the bank within the space of a few weeks. These transactions suggested the possibility of liability for unpaid taxes. The Court ruled that the summons was enforceable because it was issued to aid an ongoing investigation.

**4.** The district court's characterization of a TCMP audit as one being conducted "primarily for research purposes" is subject to question. It is unnecessary to categorize a multi–purpose summons into its primary purpose, secondary purpose, etc. If a multi–purpose summons is issued pursuant to a legitimate purpose under section 7602, it is enforceable.

The United States Supreme Court has already spoken to situations in which the IRS is conducting an audit with a dual purpose. In *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court enforced an IRS summons which had been issued for a dual purpose, i. e., both a civil and a criminal investigation. See, e. g., *United States v. First National Bank of Atlanta,* 628 F.2d 871 (5th Cir. 1980). The

statutory grant of authority for the issuance of this summons in *LaSalle* was found in section 7602, since one of the purposes of the summons was to ascertain the correctness of the tax return. The Supreme Court nevertheless made it quite clear that a section 7602 summons issued *solely* for a criminal investigation would be unenforceable. 98 S.Ct. at 2367, n. 18.

It follows that a section 7602 summons issued for a dual purpose, one being to ascertain the correctness of the taxpayers' return (as expressly authorized by section 7602) and the other being to assemble research data from the present and other randomly drawn returns, should likewise be enforceable; even though the IRS might lack the statutory power to issue a section 7602 summons for the *sole* purpose of assembling research data, *Humble Oil & Refining Company, supra.*

**5.** "[W]e hold that the Internal Revenue Service is not empowered by section 7602 to issue a summons in aid of its section 7601 research projects or inquiries, *absent an investigation of taxpayers or individuals and corporations from whom information is sought.*" *Humble,* 488 F.2d at 962–63 (Italics ours).

purpose expressly authorized by section 7602.

Section 7602 should not be read so narrowly as to imply that an audit for a purpose authorized by it must be restricted solely to that purpose and may not be utilized as a good–faith effort to obtain ancillary data. To do so would be to deny effect to the congressional intent of section 7601, i. e., to insure the general workability of the federal taxation system. Thus, the IRS may issue summonses for research purposes as long as the summons is based in good faith upon a section 7602 purpose, even though motivated more generally by an investigative or research purpose within the contemplation of section 7601. See *Flagg, supra.*

## II.

A section 7602 summons may be issued to gain data that will subsequently be used for research purposes, where the summons is also issued for a purpose authorized by the statute; but the summons must still be issued in good faith. *United States v. Harris,* 628 F.2d 875, 879 (5th Cir. 1980). In *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), the Supreme Court announced several elements of a good faith exercise: "[The IRS] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [IRS's] possession, and that the administrative steps required by the Code have been followed ...." 85 S.Ct. at 255.

Furthermore, the court in *Powell* proceeded to suggest what would constitute bad faith on the part of the IRS: "[A]n abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." 85 S.Ct. at 255. *See, e. g., United States v. Harris, supra.* The taxpayer in the instant case does not allege on appeal that the IRS acted in bad faith of this nature in issuing the summonses in conjunction with the TCMP.

*Conclusion*

 The enforcement of the summonses was sought for a stated purpose of examining the correctness of the specified tax return of named taxpayers. Their issuance is thus expressly authorized by section 7602 of the Internal Revenue Code. The circumstance that the audit was motivated to obtain research data, where the summonses are sought in good faith for a purpose authorized by section 7602, does not authorize the courts to deny their enforcement as thus issued within the statutory authority conferred upon the Internal Revenue Service by section 7602. Accordingly, we REVERSE and REMAND, with instructions to the district court to order enforcement of the summonses at issue.

REVERSED AND REMANDED.