Susan B. LONG and Philip H. Long, Plaintiffs-Appellees,

v.

**BUREAU OF ECONOMIC ANALYSIS, United States Department of Commerce, Defendant-Appellant.**

**No. 81–3090.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 30, 1981.

Decided May 4, 1981.

Opinion Filed May 14, 1981.

As Amended July 16, 1981.

---

Jonathan S. Cohen, Murray S. Horwitz, Washington, D. C., for defendant-appellant.

Stephen K. Strong, Bendich, Strobaugh & Strong, Seattle, Wash., for plaintiffs-appellees.

Before TANG, SKOPIL and CANBY, Circuit Judges.

PER CURIAM:

Ultimately at issue in this Freedom of Information Act case is whether the Bureau of Economic Analysis ("BEA") is obligated to release to Susan and Philip Long certain computer tapes, now in the BEA's posses-

sion, that were prepared by the Internal Revenue Service in connection with its Taxpayer Compliance Measurement Program ("TCMP"). On the basis of the record before us, we affirm the district court's rulings that FOIA's Exemption 3 did not bar disclosure and that the BEA was not entitled subsequently to amend its answer to assert additional defenses to disclosure.

## I. PROCEEDINGS BELOW

The Longs' pursuit of TCMP data tapes has encompassed three different lawsuits and a span of seven years. We begin our analysis by reviewing the tortuous history of proceedings that has led to the present appeal by the BEA.

In 1975, after exhausting administrative remedies, the Longs filed an FOIA suit against the Internal Revenue Service ("IRS") seeking TCMP data tapes for Phases II, III, and IV.[1] The IRS objected to disclosure, contending that the records were exempt under FOIA's Exemption 3 and 26

U.S.C. § 6103 and that the tapes contained taxpayer identification data, the deletion of which would be unreasonably burdensome. The district court granted summary judgment for the IRS, and the Longs appealed. *See Long v. Internal Revenue Service*, 596 F.2d 362 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980).

While this appeal was pending, the Longs brought a second FOIA suit against the IRS to obtain documents showing the layout of TCMP tapes. *Long v. IRS*, No. C76–910S (W.D.Wash.1976). The IRS turned over certain documents and moved to dismiss the case as moot. The district court denied the motion to dismiss and ordered discovery into the extent of the IRS's search for records. After discovery, the Longs obtained copies of core record layouts showing that IRS had prepared for the BEA copies of TCMP tapes for Phase III, Cycles 1–5 with the taxpayers' individual identities deleted.[2]

1. The Taxpayer Compliance Measurement Program is a continuing series of statistical studies by the IRS on a national scale to measure the level of compliance with the federal tax laws. TCMP data consist of a random sample of taxpayers chosen by their identification numbers, and the taxpayers are thereafter subjected to comprehensive audits by the Internal Revenue Service. *See, e. g., United States v. Flagg*, 634 F.2d 1087 (8th Cir. 1980); *United States v. First National Bank in Dallas*, 635 F.2d 391 (5th Cir. 1981). TCMP source material consists of check sheets and data tapes, containing information on the check sheets. Each check sheet contains information from an individual taxpayer's tax return, including the taxpayer's name, address, social security number, and all financial data reported on the return on an item-by-item basis. A check sheet also contains additional information obtained by a comprehensive audit of the return showing the amounts that the IRS determines should have been reported.

TCMP is divided into several "phases" and "cycles." In the *IRS* proceedings, the Longs sought access to data from Phases II, III, and IV. These phases are the Delinquent Returns Survey of Nonfarm Business, the Individual Returns Filed Survey, and the Corporate Returns Filed Survey, respectively. Each phase is divided into several cycles, denoting the year the return was filed. The computer tapes at issue in the *IRS* proceedings contained the information from the check sheets, with the information from the check sheets, with the in-

ception of the taxpayer's name and address. *See Long v. Internal Revenue Service*, 596 F.2d 362, 364 (9th Cir. 1979), *cert. denied*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980).

The tax reported and tax change figures are "blown up," using statistical weighting techniques, to estimate both the total tax reported and total tax changes. The data collected from the surveys form the data base for the development of the IRS's discriminant function (DIF) scoring system. The DIF system is used to score individual and corporate tax returns in a manner which identifies those returns that have a high tax change potential. Returns receiving a high score are more likely to be audited.

2. The IRS provided the BEA with edited tapes containing early data from TCMP Phase III (Individual Returns Filed Survey). The BEA utilizes these data to estimate the total national income account. The following table shows the cycles at issue in this case and the tapes from each cycle possessed by the BEA.

| Cycle | Tax Year | No. of Tapes | % of BEA Tapes |
|-------|----------|--------------|----------------|
| 1 | 1963 | 17 | 29 |
| 2 | 1965 | 15 | 26 |
| 3 | 1969 | 17 | 29 |
| 4 | 1971 | 4 | 7 |
| 5 | 1973 | 5 | 9 |
| 6 | 1976 | none | 0 |
| 7 | 1979 | none | 0 |
| Totals | | 58 | 100% |

Having discovered the existence of these edited tapes, the Longs requested copies of these tapes from the BEA in September 1977. The BEA Director denied the request on the ground that FOIA's Exemption 3 and 26 U.S.C. § 6103 barred disclosure. The agency also informed the Longs that the district court's decision in the Longs' first suit against the IRS barred disclosure.

On March 22, 1978, the Longs filed the present FOIA suit against the BEA, seeking (1) a declaration that they were entitled to inspect and copy the requested records, (2) a permanent injunction against the BEA to prevent its withholding of TCMP data, (3) expedition of proceedings pursuant to 5 U.S.C. § 552(a)(4)(D), and (4) attorney fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E).

The BEA's answer asserted, among other things, that plaintiffs' claims were barred by collateral estoppel, but did not specify a particular FOIA exemption as an affirmative defense.

After preliminary discovery, the Longs moved for partial summary judgment on February 20, 1979, seeking a determination that the edited tapes were disclosable and an injunction requiring the BEA to produce the Phase III, Cycle 1–5 TCMP tapes in the BEA's possession. The motion was based on the pleadings, answers to interrogatories, request for admissions, and the first declaration of Susan Long.

On March 26, 1979, the BEA filed its opposition to the motion along with two affidavits: the one of James Swartzwelder, planning officer of the IRS Research and Operations Analysis Division and chairperson of the TCMP, and the other of Robert Parker, Chief of the National Income and Wealth Division of the BEA.

On May 2, 1979, while the motion was pending, this court rendered its decision in *Long v. Internal Revenue Service*, 596 F.2d 362 (9th Cir. 1979), the Longs' first action. We held that the TCMP tapes were "records" under the FOIA and were not categorically exempt under FOIA's Exemption 3 and 26 U.S.C. § 6103, as amended by the 1976 Haskell Amendment. The IRS's argument that deletion of direct identifying data was an unreasonable burden was squarely rejected. The judgment of the district court was vacated and the cause remanded for a determination whether "disclosure of TCMP source data [would entail] a significant risk of indirect identification [of individual taxpayers]." *Id.* at 367. In a footnote, the court noted:

> Some useful information which does not identify particular taxpayers may nonetheless be exempt from disclosure under the FOIA by virtue of some other exemption. For example, exception 7(E) permits withholding of investigatory records compiled for law enforcement purposes which disclose investigative techniques and procedures. However, in this case the IRS has not raised any other exemptions which might prevent disclosure of this information.

*Id.* at 368 n.6.

On June 7, 1979, the Longs filed a supplemental motion for summary judgment in the *BEA* proceedings, arguing that the Ninth Circuit's *IRS* decision compelled release of the BEA's edited tapes and that, although Parker's affidavit filed an opposition to their motion for summary judgment alluded to a potential indirect identifier issue, the affidavit should be stricken under Fed.R.Civ.P. 56(e) because information in the affidavit was not based on the affiant's personal knowledge of the issue. The BEA responded and again argued that the motion should be held in abeyance, this time because a petition for rehearing was likely to be filed in the *IRS* case.

The summary judgment motion was continued by several orders of the district

court. On September 7, 1979, the court entered an order taking the motion under advisement.

In September 1979, the IRS filed a petition for rehearing, and, taking heart in footnote 6 of our *IRS* decision, argued that FOIA's Exemption 7(E), 5 U.S.C. § 552(b)(7)(E), should bar release of the TCMP data. This court concluded that the IRS's "law enforcement" argument was untimely and denied the petition on September 27, 1979. The IRS's suggestion for rehearing en banc was denied on November 9, 1979.

In November 1979, the Longs instituted procedures to depose Robert Parker regarding matters stated in his affidavit. The BEA countered by moving for a protective order, asserting this time that the IRS was likely to petition for certiorari in the *IRS* case and that the deposition would be a waste of time and money. The district court declined to act on the motion, and in March 1980, Parker was deposed. His deposition showed that he had no personal knowledge as to whether taxpayers could be indirectly identified if TCMP data were released and that he only had a general understanding or assumption that the IRS did not want to disclose the data, because "there [was] a possibility of people finding out [the] identit[ies] of individual taxpayers . . . ."

The IRS petitioned for certiorari, dropping its § 6103 defense, but seeking an order directing the Ninth Circuit to remand the case to the district court with instructions to consider Exemptions 2 and 7(E) of the FOIA, 5 U.S.C. § 552(b)(2), (7)(E). On April 28, 1980, the Supreme Court denied the petition and the matter was returned to the district court for further proceedings. *See Internal Revenue Service v. Long*, 446 U.S. 917, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980).

In late August 1980, the IRS moved to amend its answer in the *IRS* proceedings to raise three new defenses to disclosure: Exemption 2; Exemption 7(E); and the district court's inherent equity power to refuse disclosure even in the absence of a specific FOIA exemption. The motion was granted on October 17, 1980. The BEA did not move to amend its answer at this time, nor did it seek to consolidate the *IRS* case with the *BEA* proceedings.

On December 31, 1980, some 33 months after the filing of the complaint in the *BEA* case and 22 months after the filing of the Longs' motion for partial summary judgment, the district court granted the Longs' motion for partial summary judgment, determining that *Long v. Internal Revenue Service*, 596 F.2d 362 (9th Cir. 1979), was controlling. On January 12, 1981, the court entered an injunction ordering the BEA to release copies of the TCMP tapes by January 30, 1981.

On January 12, 1981, apparently before receiving notification of the district court's injunctive order, the BEA filed a "Motion for Reconsideration and for Stay of Proceedings or Amendment." By this motion, the BEA requested that the court reconsider and vacate its order of December 31, 1980 and hold further *BEA* proceedings in abeyance pending resolution of the *IRS* case then on remand to the district court. Although not submitting a proposed answer at the time, the BEA as a second alternative requested that it be permitted to amend its answer as the IRS had done previously.

On January 15, 1981, the district court entered a minute order denying the BEA's January 12 motion. The order did not directly refer to the BEA's alternative request that it be permitted to amend; however, denial of that request was implicit in view of the district court's denial of the other aspects of the BEA's motion.

The parties thereafter stipulated to a February 6, 1981 release date, thus extending the January 30 deadline imposed by the district court on January 12, 1981.

On February 2, 1981, the BEA moved the district court to vacate its January 12 in-

junctive order, to grant reconsideration of the denial of leave to amend, and, in the alternative, to grant a stay of *BEA* proceedings pending resolution of *IRS* proceedings. As a second alternative, BEA requested a stay of the injunction pending appeal to the Ninth Circuit. For the first time, BEA submitted a proposed amended answer, adding the three new defenses raised in the *IRS* proceedings. By way of a separate motion filed on the same date, BEA sought consolidation of the *BEA* and *IRS* proceedings. The Longs filed their opposition to the BEA's motions and, on February 5, 1981, the BEA filed its response.

The February 6, 1981 release date arrived, and the BEA immediately appealed the orders of December 31, 1980, January 12, 1981, and January 15, 1981. On the same date, the district court entered an order denying the BEA's February 2 motion for reconsideration, amendment, and stay of proceedings, but granting a limited ten-day stay pending application to this court for a stay pending appeal. The court also entered a minute order denying the motion for consolidation.

This appeal was docketed on the same date, along with the BEA's emergency motion for stay pending appeal.

On February 12, 1981, the BEA filed another notice of appeal under the same docket number, including in its request for review the district court's February 6 order denying the BEA's motion for reconsideration.

BEA was eventually granted a stay by the Supreme Court on March 9, 1981. Proceedings on appeal were thereafter expedited by this court, culminating in oral argument by telephone conference call on April 30, 1981.[3]

## II. *JURISDICTION*

■ Our jurisdiction over the district court's orders of December 31, 1980 and January 12, 1981 is clear. Both the Longs and the BEA have characterized these orders as appealable under 28 U.S.C. § 1291 in light of the practical finality of the district court's injunctive order requiring disclosure. We agree, but also note jurisdiction to review the January 12 order under 28 U.S.C. § 1292(a)(1), a review that carries with it all previous orders and rulings to the extent they are subsumed into the appealed ruling. 9 *Moore's Federal Practice* ¶ 110.25[1] at 270–71 (2d ed. 1980).

Turning to the January 15 order, however, the Longs argue that the district court's ruling on the BEA's motion for reconsideration of the December 31 order granting partial summary judgment, for leave to amend, and for stay of further *BEA* proceedings was not a final judgment under 28 U.S.C. § 1291, nor an appealable interlocutory order under 28 U.S.C. § 1292. The Longs thus seek to limit our review to the Exemption 3 issue and to insulate from review the question whether the district court erred in denying leave to amend.

■ It is true that an order refusing to permit amendment of pleadings, refusing to reconsider an earlier interlocutory order granting partial summary judgment, and refusing to stay a court's own proceedings is not *independently* appealable. The critical element here, however, is that the January 15 order is not before us in isolation. Rather the order is inextricably intertwined with the patently reviewable grant of injunctive relief that was an inevitable "next step" to the court's ruling on the Longs' motion for partial summary judgment. *See* 5 U.S.C. § 552(a)(4)(B).

■ A determination that we are without jurisdiction to review the January 15 order would fly in the face of notions of judicial economy and the sound administration of justice. *See Yamamoto v. Omiya*, 564 F.2d 1319, 1325 n.11 (9th Cir. 1977).

---

**3.** On May 4, 1981, due to the need for immediate action, we entered an order setting forth our decision on each of the issues on appeal and stating that this opinion would follow. This opinion was filed on May 14, 1981.

The district court's denial of leave to amend, its refusal to reconsider and vacate its determination that the tapes were disclosable, and its refusal to stay proceedings pending resolution of the *IRS* proceedings are interrelated with one another and with the December 31 and January 12 orders. Moreover, absent this court's review of the amendment issue, BEA, as a practical matter, is denied meaningful appellate review. *See Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152–54, 85 S.Ct. 308, 310–312, 13 L.Ed.2d 199 (1964).

The Longs next argue that the February 6 order is not properly before us, asserting that the BEA's February 6 notice of appeal divested the district court of jurisdiction to subsequently enter its order a few hours or minutes later. The Longs characterize the order as void, argue that there can be no appeal from a void order, and request dismissal of the BEA's February 12 appeal.

 To analyze this contention, it is first necessary to characterize the February 2 motion. Because the motion was not served within ten days of the appealable January 12 injunctive order, the motion can properly be characterized only as one seeking relief under Fed.R.Civ.P. 60(b). *See Rodriguez v. Southern Pacific Transportation Co.,* 587 F.2d 980, 981 (9th Cir. 1978); *Merrell-National Laboratories, Inc. v. Zenith Laboratories, Inc.,* 579 F.2d 786, 790–91 (3d Cir. 1978). A Rule 60(b) motion, unlike a Rule 59 motion, does not toll the time for taking an appeal from the order upon which reconsideration is sought nor divest that order of its finality. *See Browder v. Director, Department of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); Fed.R.App.P. 4(a)(4).

 In this circuit, the rule has generally been stated that the filing of a notice of appeal divests the district court of jurisdiction to dispose of the motion after an appeal has been taken, without a remand from this court. *See Smith v. Lujan,* 588 F.2d 1304, 1307 (9th Cir. 1979); *Crateo, Inc.*

*v. Intermark, Inc.,* 536 F.2d 862 (9th Cir.), *cert. denied,* 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); *Canadian Ingersoll-Rand Co. v. Peterson Products,* 350 F.2d 18 (9th Cir. 1965). To seek Rule 60(b) relief, the proper procedure is to ask the district court to indicate whether it wishes to entertain the motion, or to grant it, and then move this court, if appropriate, for remand of the case. *Smith v. Lujan,* 558 F.2d at 1307.

Other circuits have disagreed and determined that during the pendency of an appeal a district court has jurisdiction to consider a Rule 60(b) motion and, if it finds the motion to be without merit, to enter an order denying the motion from which an appeal may be taken. However, even these circuits have determined that, if the court is inclined to grant the motion, the movant should first request the court of appeals to remand the case so that a proper order can be entered. *See Pioneer Insurance Co. v. Gelt,* 558 F.2d 1303, 1311–12 (8th Cir. 1977); *Lairsey v. Advance Abrasives Co.,* 542 F.2d 928 (5th Cir. 1976). This limitation on district court jurisdiction prevents the appellate court from being confronted with an uncontrollable moving target.

Yet another circuit has determined that, at least where the appeal has not yet been docketed in the appellate court, the district court retains jurisdiction in certain circumstances to entertain a Rule 60(b) motion. *See Williams v. McKenzie,* 576 F.2d 566, 570 (4th Cir. 1978).

 In the present case, we are confronted with the unique circumstance that four events all occurred on the same day, February 6, 1981: the stipulated release date for the TCMP data arrived; the BEA's appeal was filed in the district court; the district court filed and entered its order denying reconsideration; and the appeal was docketed in this court. Moreover, the district court's order did not alter the stance of this litigation, other than to provide additional source material explaining the district

court's reasoning in denying this and prior motions of the BEA. Under the particular facts here, we hold that the district court was not divested of jurisdiction to deny the motion because of fortuity of the docketing in the district court and this court. On these facts, our determination is not inconsistent with the *Lujan* line of cases, nor inconsistent with principles of sound judicial administration. The district court's action in no way confronted this court with a moving target in the appellate process and instead illuminates the reasoning underlying the district court's prior determinations and eliminates any possible deficiency in the court's prior order of January 15, which failed expressly to address the BEA's request for amendment of its answer. The BEA's February 12 appeal properly brings that order before us for review.

## III. *THE FREEDOM OF INFORMATION ACT: EXEMPTION 3*

 The Freedom of Information Act, 5 U.S.C. § 552, mandates a policy of broad disclosure of government documents. When a request is made, an agency may withhold a document, or portions thereof, only if the information contained in the document falls within one of nine statutory exemptions to the disclosure requirement of 5 U.S.C. § 552(a)(3). *Church of Scientology of California v. U. S. Department of the Army*, 611 F.2d 738, 741–42 (9th Cir. 1979). The burden remains on the Government to establish exempt status, and the nine exemptions are to be narrowly construed. *See Department of Air Force v. Rose*, 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–99, 48 L.Ed.2d 11 (1976); *Church of Scientology of California*, 611 F.2d at 742–43.

Under Exemption 3, an agency is not required to disclose matters:

specifically exempt from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave to discretion on the issue, or (B) establishes

particular criteria for withholding offers to particular types of matters to be withheld[.]

5 U.S.C. § 552(b)(3).

In asserting the applicability of Exemption 3, the BEA relied upon 26 U.S.C. § 6103, which provides that "return information" shall be confidential. The 1976 amendment to § 6103 (the "Haskell Amendment"), in effect at the time the BEA denied the Longs' request for records, provides that return information does "not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer." 26 U.S.C. § 6103(b)(2) (1976).

In *Long v. Internal Revenue Service*, 596 F.2d 362, 365 & n.2 (9th Cir. 1979), we analyzed the applicability of § 6103, as amended, in evaluating the IRS's assertion that Exemption 3 prohibited disclosure of the TCMP data there at issue. We held that § 6103 did not categorically exempt all return information data, but barred disclosure only of data that identify particular taxpayers.

As noted, it is the clear purpose of section 6103 to protect the privacy of taxpayers. At the same time the amendment demonstrates a purpose to permit the disclosure of compilations of useful data in circumstances which do not pose serious risks of a privacy breach.

*Id.* at 368. We remanded the case to the district court to determine "whether disclosure of TCMP source data entails a significant risk of indirect identification," noting

that with respect to the tax model, there is a similar risk that disclosure of the information will permit indirect identification, yet the administrative practice of the Internal Revenue Service has been to release such information. In evaluating the degree of the risk of disclosure from TCMP source material, it will be helpful to compare the risk that the IRS has

found acceptable with respect to the tax model.

*Id.* at 367.[4]

This decision narrowly frames the Exemption 3 issue before us. To avoid disclosure, the BEA's burden at trial would be to show that disclosure of the redacted TCMP data in its possession would pose serious risks of indirect identification of the individual taxpayers who are the subject of the TCMP source material. Moreover, any such risk must exceed the risk of indirect identification of taxpayers who are the subject of Tax Model data. Because the Tax Model and TCMP data are different only in that the Tax Model data shows only reported items and the TCMP data shows both reported items and the amounts the IRS has determined should have been reported, to succeed, the BEA would have to show that this addition of amounts determined to be correct would be the cause of a serious risk of privacy breach. This is the standard against which we review the district court's grant of summary judgment.

The BEA has devoted only a minor portion of its argument on appeal to the Exemption 3 claim. The BEA argues that the decision in *Long v. Internal Revenue Service,* 596 F.2d 363 (9th Cir. 1979), is wrong. The BEA also contends that the district court erred in ordering release of the TCMP tapes without an examination, as to their having "possible indirect identifiers," because this constituted a material issue of fact rendering summary judgment inappropriate.

The Longs counter with two arguments. They assert that the BEA waived the Exemption 3 defense because it failed to specify any particular FOIA exemption in its answer. They also assert that both they

and the BEA submitted evidence showing that taxpayers' identities were protected by deletions of identifying items from the TCMP tapes.

 The BEA's argument that our prior decision in the *IRS* case was wrong need not detain us long. Such an argument would be appropriate only upon en banc review. Such review has been once denied.

 As to the Longs' argument that the BEA's answer was defective, we determine that the issue has been waived. It is undisputed that the BEA has the burden of specifying any exemption claimed in its answer as an affirmative defense. However, in this case, the administrative denials of the Longs' request for records referred to Exemption 3 and 26 U.S.C. § 6103. Further, the case proceeded on this theory throughout. The Exemption 3 issue having been litigated by the implied consent of the parties, it is too late for the Longs to raise the issue of the BEA's defective pleading.

The critical issue then is whether a material issue of fact existed on the indirect identifier issue. We conclude that on the record before us no such issue existed and, therefore, the grant of summary judgment was proper.

 A movant is entitled to summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Bieghler v. Kleppe,* 633 F.2d 531 (9th Cir. 1980). The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Id.* Even un-

---

**4.** The Internal Revenue Service prepares numerous "tax models," which are like the TCMP samples of taxpayers, except that no audit is necessarily done on those taxpayers included in the tax models. Tax Models are prepared for different years, different geographic areas, and different types of taxpayers or returns. The models each contain the figures from actual

individual returns, item-by-item. These returns are put on computer tapes by the IRS and are used to formulate tax policy. They are referred to as models because they are statistical samples which can be "blown up," like TCMP, to represent the entire population. These tax model tapes are regularly made available to the public with the taxpayers' identities deleted.

der the FOIA, the burden remains on the movant to establish the absence of genuine factual disputes, regardless of where the burden would lie at trial. *See Weisberg v. U. S. Department of Justice*, 627 F.2d 365, 368 & n.4 (D.C. Cir. 1980).

If the moving party meets this burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979). The opposing party cannot stand on his pleadings once the movant has submitted affidavits or other similar materials. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). Conclusory affidavits and affidavits that do not affirmatively show personal knowledge of "specific facts" are insufficient. *Id.; Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). We are mindful that in determining whether summary judgment is proper, the court is to draw all inferences of fact in the light most favorable to the party opposing the motion. *Sankovich v. Life Insurance Co. of North America*, 638 F.2d 136 (9th Cir. 1981).

We find that the Longs met their initial burden and that the BEA failed to rebut that showing. In the Longs' request for interrogatories, they sought information on the issue whether the TCMP tapes "otherwise identif[ied] a particular taxpayer." The BEA's answers merely stated "no name or taxpayer identification number." Susan Long's declaration verified the core record layout provided by the IRS, which stated in boldface lettering:

TAXPAYER IDENTIFICATION INFORMATION HAS BEEN REMOVED SO THAT BASE FILE CAN BE PROVIDED TO OUTSIDE GOVERNMENT AGENCY OR OTHER ENTITY.

Even Swartzwelder's affidavit submitted in opposition to the motion stated that the deletions were made for the purpose of "providing additional safeguards against a *potential* invasion of privacy interest . . . ." (Emphasis added.)

Given this showing, it was incumbent upon the BEA to show affirmatively, by way of affidavit, a significant risk of indirect identification. On the record before us, all we have are conclusory allegations contained in the supporting legal memorandum in opposition to the motion and the affidavit of Robert Parker, which shows that he had no personal knowledge of any indirect identifier problem—a matter confirmed by his deposition. Indeed, even at oral argument, the BEA's counsel stated that the BEA had not yet determined whether any such indirect identifier problem was present.

Given the convincing presentation by the Longs, the BEA was obligated to bring to the district court's attention some affirmative indication that its version of the relevant facts was not fanciful. This the BEA failed to do. Summary judgment was proper, and the grant of injunctive relief warranted.

## IV. DENIAL OF LEAVE TO AMEND

Fed.R.Civ.P. 15(a) provides that leave to amend is to be "freely given when justice so requires." Factors to be considered by the district court in determining whether to grant or deny such leave include whether there has been undue delay, bad faith, or a repeated failure to cure deficiencies, and whether amendment would be futile or cause undue prejudice to the opposing party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The decision, however, rests in the sound discretion of the district court, and will not be overturned on appeal absent a clear showing of an abuse of discretion. *See id.; Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973); *Komie v. Buehler Corp.*, 449 F.2d 644 (9th Cir. 1971). Our task is not to review the district court's decision de novo.

The record, in particular the court's order of February 6, 1981, shows that the district denied amendment because it found the length and nature of the BEA's delay to be excessive and unreasonable and because it found that any further delay would seriously prejudice the Longs by causing the loss of Susan Long's research funding. The record before us amply supports this determination; there was no abuse of discretion.

The length of the BEA's delay was certainly excessive. The motion to amend the answer was not made until approximately 34 months after the filing of the Longs' FOIA complaint, until approximately 23 months after the filing of the Longs' motion for summary judgment, and only after the tapes had been ordered released. Moreover, the Government had been asserting the Exemption 7(E) defense for well over a year in the *IRS* proceedings involving similar but more comprehensive TCMP data, and cannot assert either that there was a recent change in the law or that new facts were present so as to justify its belated request for amendment.

Moreover, our determination that the request came too late is supported by the nature of the underlying proceedings. The FOIA mandates that all such lawsuits be speedily pursued and resolved. The FOIA gives the Government only thirty days to file its answer and requires that cases "shall be assigned for hearing and trial at the earliest practicable date and expedited in every way." 5 U.S.C. § 552(a)(4)(C), (D). Congress has expressly recognized that information is "likely to be a perishable commodity, and in many cases these procedural delays by Government attorneys—whether or not made in good faith—may result in substantive damage to plaintiff's case." *See* H.R.Rep.No. 1419, 92d Cong., 2d Sess. 74 (1972).

In a FOIA case, delay by the Government in raising defenses should be particularly disfavored. The Government should not be permitted to try its theories seriatim absent the most compelling and excusable circum-

stances. We agree with the statement by the District of Columbia Circuit:

> The interests of judicial economy and finality militate against a court's tolerating a piecemeal approach by a party. This court has accordingly directed that agencies not make new exemption claims to a district court after the judge has ruled in the other party's favor. *See Grumman Aircraft Engineering Corp. v. Renegotiation Bd.*, 482 F.2d 710, 721–22 (D.C. Cir. 1973) (upholding denial of motion for rehearing), *rev'd on other grounds*, 421 U.S. 168, 95 S.Ct. 1491, 44 L.Ed.2d 57 (1975).

*Holy Spirit Ass'n for the Unification of World Christianity v. Central Intelligence Agency*, 636 F.2d 838, 846 (D.C. Cir. 1980). Indeed, our strong aversion to such belated requests for amendment has been demonstrated even in non-FOIA cases. *See, e. g., Black v. Payne*, 591 F.2d 83 (9th Cir.), *cert. denied*, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979); *Jackson v. American Bar Ass'n*, 538 F.2d 829 (9th Cir. 1976); *see also Freeman v. Continental Gin Co.*, 381 F.2d 459, 469–70 (5th Cir. 1967). It makes no difference that it is the Government here rather than a private party that seeks amendment. Congress has made the Government answerable as a defendant; the Government is obligated to abide by the same prescribed rules as any other litigant.

The district court did not abuse its discretion in also determining that the nature of the BEA's delay was unreasonable. The BEA asserts, in essence, that it was justified in failing to amend any sooner because it thought of this case as mere surplusage to the earlier-filed *IRS* action. Notably, however, the BEA never moved to consolidate the two cases until after the grant of summary judgment and after denial of leave to amend. The BEA does not have the omnipotent power to decide which case is to be controlling and to decide not to try a case because in *its* view the case is collateral to another proceeding. The record here is replete with evidence that the Longs did not share the BEA's view that the *BEA*

action was collateral to the *IRS* proceedings and that the Longs continually urged the district court to act on their pending motion for summary judgment. The BEA's claim of surprise by the grant of summary judgment is not well taken. The nature of the BEA's delay was inexcusable and contrary to the purposes of the FOIA.

Turning to the issue of prejudice, the record showed that Susan Long would suffer undue prejudice by the delay that amendment of the answer would cause. The harm to her ability to secure grants for her research and, concommitantly, her ability to advance her career as an instructor and social scientist was clear on the record.

The BEA argues that any prejudice to Susan Long "pales by comparison to the prejudice the Government would experience if it must give up the documents at issue without a full hearing on the merits." The BEA, however, did not clearly press this point in its January 12 motion for amendment. Although the BEA did submit affidavits to the district court, which had previously been filed in the *IRS* case, the affidavits did not specifically and independently address the impact of the release of the tapes *here* at issue and the allegations of harm to IRS law enforcement activities were vague and conclusory. Moreover, nothing in the BEA's accompanying legal memorandum even addressed the amendment issue as a separate matter.

Even considering the BEA's Rule 60(b) motion for reconsideration of denial of leave to amend, which addressed with somewhat greater specificity the allegations of harm to the Government's law enforcement program, we are not persuaded that the district court abused its discretion in refusing to vacate its prior orders. We note, in addition, that this claim of harm is hotly disputed.[5] We might be intrigued by the law enforcement argument on a different record, but are constrained here by the BEA's inexcusable failure to make that record. Moreover, we find the Government's allegations that irreparable harm will result from release of the tapes difficult to credit in light of the BEA's failure to take even the most basic steps to raise the issue in the district court.

## V. CONCLUSION

For the reasons set forth above, we AFFIRM the four rulings of the district court before us.

We have also determined that plaintiffs are entitled to an award of attorney fees and costs in the proceedings below and on appeal and REMAND the case to the district court to determine those amounts. *See* 5 U.S.C. § 552(a)(4)(E).

---

**5.** The BEA has asserted that release of the data would lead to disclosure of investigatory techniques and procedures and would risk circumvention of the IRS's law enforcement activities. The BEA contends that release of the source data would be "nothing less than supplying a blueprint" for tax avoidance, *see* Appellant's Brief at 9, because anyone knowledgeable in statistics could develop a DIF scoring system similar to formulae used by the IRS to score returns for their audit potential. Susan Long has asserted, on the other hand, that the allegations of harm are inapplicable because the IRS presently screens returns for audit using DIF formulae constructed from Cycle 6 data and, in a lengthy discussion of statistical procedures, that the IRS's DIF system cannot be reconstructed in a way that will harm the IRS's enforcement activities.