**UNITED STATES of America and Joseph M. Bilunas, Revenue Agent of the Internal Revenue Service, Appellants,**

v.

**BARTER SYSTEMS, INC. and Harry Hayter as President of the Barter Systems, Inc., Appellees.**

**No. 81–2270.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1982.

Decided Dec. 3, 1982.

Rehearing Denied Jan. 24, 1983.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Charles E. Brookhart, William A. Whitledge, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellants.

Clifton Peter Rose, Williams & Jensen, P.C., Washington, D.C., for appellees.

Before LAY, Chief Judge, JOHN R. GIB-SON, Circuit Judge, and FAIRCHILD, Senior Circuit Judge *.

JOHN R. GIBSON, Circuit Judge.

The United States and Joseph M. Bilunas, Revenue Agent of the Internal Revenue Service (IRS), appeal a decision of the district court denying enforcement of an IRS summons issued to Barter Systems, Inc. (BSI) and Harry Hayter, President of BSI. 1982–1 U.S. Tax Cas. (CCH) ¶ 9127 (D.Neb. Sept. 16, 1981). This case involves the question of whether an IRS summons that is issued to determine the correct tax liabilities of a named taxpayer, but that also would aid in investigating the tax liabilities of unnamed taxpayers, is enforceable only if the John Doe summons procedures of 26 U.S.C. § 7609(f) (1976) are met. We hold that the IRS is not required to follow section 7609(f) in issuing this summons. We therefore reverse the order of the district court and remand with instructions to enforce the summons.

The facts in this case are not in dispute. BSI is a corporation that conducts business in Omaha, Nebraska as a barter exchange. A barter exchange acts as a clearinghouse for the purchase of goods and services by exchange members. Trading between exchange members is conducted in "barter units" with no cash changing hands. If an exchange member wishes to purchase certain goods or services, he obtains a referral by the exchange to a "providing member" who supplies the desired goods or services. When the purchasing and providing members have agreed on prices and terms, the providing member contacts the exchange.

If the exchange ascertains that the purchasing member has sufficient barter units in his account, it authorizes the trade. For facilitating such barter exchanges, BSI charges its members a fee of ten percent of the value of each transaction, payable in barter units and credited to BSI's account. BSI also charges its members an initiation fee and annual dues, both paid in cash. These transactions result in tax consequences for BSI, as well as for exchange members engaging in them.

On September 19, 1979, the IRS issued a directive establishing the Barter Exchange Project Unreported Income Program. The purpose of the project was to "identify and select returns in need of examination that are associated with organized barter exchanges . . . . [including] the returns of bartering exchanges, owners and operators and members of such exchanges." The directive further provided that if the operator of the exchange declined to furnish information concerning its members, a John Doe summons pursuant to 26 U.S.C. § 7609(f) (1976) "should be issued after consultation with District Counsel." The procedures described in the September 19, 1979 directive were formally incorporated into the IRS' Manual Supplement on March 11, 1980.[1]

The IRS selected BSI for audit from a list of barter exchanges in the Omaha telephone directory. Revenue Agent Bilunas, one of the appellants herein, was assigned to conduct the audit to determine the correct tax liabilities of BSI for the years 1978 and 1979. To further his investigation, Bilunas issued the summons in question to

* The Honorable Thomas E. Fairchild, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Internal Revenue Service, U.S. Dep't of the Treasury, Manual Supplement Nos. 45G–324, 41G–133, 42G–405 & 9G–114, Barter Exchange Project Unreported Income Program (UIP) (1980). The Manual Supplement provides in pertinent part:

.01 Voluntary cooperation by barter or trade exchanges and their members should be solicited before consideration is given to issuing a summons.

.02 If voluntary cooperation is not obtained, identities of other members of the exchange and the details of their transactions should be secured using the Service's authority under Sections 7601 and 7602.

1 If the operator of the exchange declines to furnish the identities of participants and details of their transactions, a John Doe summons should be issued after consultation with District Counsel. The provision of Section 7609(f) of the Internal Revenue Code must be met before a John Doe summons is issued.

*Id.* §§ 7.01–.02(1), at 4.

have the following records of BSI produced for the period from January 1, 1978, through December 31, 1979: [2]

1. Books, papers, account cards or other records upon which the following information is recorded:

(A) All members' names and account numbers;

(B) Exchange member transactions including the price and/or trade units assigned to goods or services rendered or received;

(C) All initiation or membership fees, and other income, including commissions on members' transactions.

2. The disbursements journal and trade credit ledger.

3. All monthly account statements for each exchange member.

The summons was issued pursuant to 26 U.S.C. § 7602 (1976), and did not utilize the John Doe summons procedures of section 7609(f).

Upon BSI's refusal to produce the requested names and member numbers, the United States and Revenue Agent Bilunas initiated an enforcement action under 26 U.S.C. §§ 7402(b) and 7604(a) in the United States District Court for the District of Nebraska. In a Memorandum Opinion dated September 16, 1981, the district court found that the unidentified member names were relevant and necessary to the audit of BSI, and that the conduct of that audit was one purpose for which the summons was issued. The district court also found that another purpose of the summons was to aid

in the investigation of unidentified members of the exchange as part of the IRS' barter exchange project. Noting that section 7609(f) provides restrictions on the use of summonses to ascertain the names of unidentified taxpayers and that the IRS did not follow these restrictions in this instance, the district court held that the summons was not issued for a legitimate purpose under *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).[3] The district court thereupon entered an order denying enforcement of the summons. This appeal followed.

Appellants' principal contention on appeal is that the district court erred in its interpretation of section 7609(f) by holding that it requires the John Doe summons procedures to be followed in issuing a summons which has a dual purpose of determining a known taxpayer's liabilities and discovering information that would aid in investigating the tax liabilities of unnamed taxpayers. After carefully reviewing the record, we agree with appellants' contention and accordingly reverse.[4]

I. Statutory Background

The relevant statutory framework for this case consists of section 7602 and section 7609(f) of the Internal Revenue Code. 26 U.S.C. §§ 7602, 7609(f) (1976).

Under section 7602, the IRS has broad powers "to examine any books, papers, records, or other data which may be relevant" to investigating a person's compliance with the internal revenue laws. 26 U.S.C. § 7602 (1976).[5] Section 7602 authorizes the IRS not only to obtain records held by the

---

2. The summons was served on BSI and Harry Hayter, who was then president of BSI. Since then Mr. Hayter sold his entire interest in the company and is no longer involved in it in any capacity.

3. Additionally, the district court implicitly held under *United States v. Powell* that the IRS had not followed all the necessary administrative steps of the Internal Revenue Code (here the steps contained in section 7609(f)). The district court, however, gave little explanation for this holding.

4. Since we agree with appellants' principal contention, we need not address its alternative contention that the district court's finding that one of the purposes in issuing the summons

was to aid in the investigation of unnamed exchange members is unsupported by the record.

5. Section 7602 provides in its entirety as follows:

§ 7602. Examination of books and witnesses

For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—

taxpayer, but also to summon, question, and require production from "any person" who holds records "relating to the business· of the person liable for tax." *Id.*

If the IRS wishes to examine the tax liabilities of unnamed or unknown taxpayers, it may issue a "John Doe" summons to a third party who possesses the information necessary to identify the unnamed taxpayers. In *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), the Supreme Court held that sections 7601[6] and 7602 authorize the issuance of such summons, subject to those limitations on the use of any summons which the Court laid down in *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), and *United States v. Powell, supra.*[7] In so holding, the court reasoned that in the absence of such construction "no meaningful investigation . . . could be conducted" and thus "[s]ettled principles of statutory construction require that we avoid such a result absent unambiguous directions from Congress." 420 U.S. at 150, 95 S.Ct. at 921.

The *Bisceglia* decision produced some concern in Congress that the use of the John Doe summons might become widespread and uncontrolled. To provide a check on its use, Congress enacted section 7609(f) as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1205(a), 90 Stat. 1520, 1701–02. Section 7609(f) provides:

(f) Additional requirement in the case of a John Doe summons

Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

> (1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

> (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

> (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

Subsection (h) grants jurisdiction to the appropriate district court to determine proceedings brought under section 7609(f), and mandates that such determinations "shall be made ex parte and shall be made solely upon the petition and supporting affidavits." 26 U.S.C. § 7609(h) (1976).

## II. The Good Faith Requirements of *United States v. Powell*

A prerequisite to judicial enforcement of an IRS summons is that it meet the

> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
> (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
> (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.
> 26 U.S.C. § 7602 (1976).

**6.** Section 7601 imposes a broad duty upon the IRS to investigate and inquire after "all persons . . . who may be liable to pay any internal

revenue tax." 26 U.S.C. § 7601 (1976). Section 7602 is a more specific grant of authority and gives the IRS the necessary tools to effect the broad mandate of section 7601.

**7.** The circumstances involved in *Bisceglia* are as follows. An unknown bank customer deposited unusually large amounts of high denomination currency in uniformly deteriorated condition. The IRS, suspecting that the transactions relating to the deposits may not have been reported for tax purposes, began an investigation. As part of the investigation, the IRS issued a "John Doe" summons to an officer of the bank at which the deposits were made, calling for the production of books and records providing information as to who deposited the currency in question. The bank officer refused to comply with the summons, whereupon the IRS initiated enforcement proceedings in federal court.

good faith requirements of *United States v. Powell, supra.*[8] These requirements are fourfold: (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the IRS does not already possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed. *Id.* 379 U.S. at 57–58, 85 S.Ct. at 254–255; *see* 26 U.S.C. § 7605(b) (1976). Once the IRS establishes a prima facie case, the burden shifts to the taxpayer to disprove one of these elements; that burden is a heavy one. *United States v. LaSalle National Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978); *United States v. First National Bank of Mitchell,* 691 F.2d 386 at 388 (8th Cir.1982) (per curiam).

In the instant case, the IRS made a prima facie showing at trial that the four *Powell* requirements had been met. Taxpayer BSI then sought to disprove three of these four elements (the first, the second, and the fourth). The district court agreed with the taxpayer with respect to the first and fourth elements, and on this basis denied the enforcement of the summons. Taxpayer contends on appeal that the district court correctly concluded that the first and fourth *Powell* requirements were not met.

### A. The Legitimacy of the Summons Purpose

In challenging the legitimacy of the summons purpose, taxpayer in essence contends that the IRS, by not following the special summons procedures of section 7609(f) in this instance, did not issue the summons for a congressionally authorized purpose under section 7602.[9] We disagree.[10]

In *United States v. Euge,* 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980), the Supreme Court described the deferential standard of review to be applied in construing the IRS' summons authority:

> [T]his Court has consistently construed congressional intent to require that if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax code, that authority should be upheld absent *express statutory prohibition or substantial countervailing policies.* [*Id.* at 711, 100 S.Ct. at 878 (emphasis added).]

*See, e.g., United States v. Bisceglia, supra,* 420 U.S. at 150, 95 S.Ct. at 921 (avoiding narrow construction of summons authority "absent unambiguous directions from Congress"); *Donaldson v. United States,* 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971) (refusing to limit summons authority in a manner that would "stultify enforcement of federal law"); *United States v. Powell, supra,* 379 U.S. at 53–54, 85 S.Ct. at 252–253 (rejecting stringent interpretation of summons authority "because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted").

---

**8.** The *Powell* test was later incorporated into a more expansive set of criteria in *United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978). These additional criteria, however, are not at issue on this appeal.

**9.** Taxpayer does not contend that the summons was issued for other improper purposes such as to harass the taxpayer or to put pressure on it to settle a collateral dispute. *See United States v. Powell, supra,* 379 U.S. at 58, 85 S.Ct. at 255.

**10.** This is a case of first impression in this circuit and, as far as we are aware, has not been decided by other courts of appeals. This court considered another dual purpose summons in *United States v. Flagg,* 634 F.2d 1087 (8th Cir.1980), *cert. denied,* 451 U.S. 909, 101 S.Ct. 1977, 68 L.Ed.2d 297 (1981); however, that case does not dispose of the question presented here since it did not involve a statute such as section 7609(f) that imposes certain restrictions on the issuance of an IRS summons. Similarly, *United States v. LaSalle National Bank, supra,* and *United States v. First National Bank in Dallas,* 635 F.2d 391 (5th Cir.), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981), are not directly on point.

In applying this standard,[11] the district court had no difficulty in concluding that one of the purposes of the summons—to ascertain the correctness of BSI's returns—was "squarely within the statutory language of Section 7602." However, the second purpose of the summons—to investigate unidentified members of the exchange—"require[d] closer scrutiny." In examining the latter purpose, the district court concluded that "[t]his appears to be the type of situation where ... the express statutory requirements of Section 7609(f) for a John Doe summons must be met." In so concluding, however, the district court read into section 7609(f) a statutory prohibition that Congress did not *expressly* intend, thus misinterpreting *Euge* and the deferential standard that it requires. Our review of section 7609(f) indicates no such "express statutory prohibition." [12]

■ Section 7609(f), by its express terms, applies "in the case of a John Doe summons," requiring judicial approval only when the summons "does not identify the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(f) (1976). The statute, however, does not apply to the summons issued here, since the summons did identify the person with respect to whose liability the summons was issued, namely, BSI, and therefore was not a John Doe summons. Neither does the statute limit any fallout or ancillary benefit the IRS might receive in conducting an investigation of a named taxpayer that also discloses information relating to other third parties whom the IRS might wish to audit.

Rather, the statute appears to be directed solely at controlling a particular type of summons, that of the John Doe. We conclude that section 7609(f) contains no "express statutory prohibition" against the enforcement of this summons under section 7602. We further conclude that section 7609(f), because of its limited scope in applying only to John Doe summonses when the taxpayer's identity is not known, does not express a "substantial countervailing policy" that would deny the enforcement of this summons.

Nothing in the legislative history suggests that Congress intended a broader interpretation. As indicated in the House and Senate Committee Reports, Congress recognized the importance of the John Doe summons as an administrative tool, but nonetheless sought to provide some check over its use. Section 7609(f) was enacted to ensure that the John Doe summons would not be indiscriminately used to conduct "fishing expedition[s]" through the records of third parties. S.Rep. No. 938, 94th Cong., 2d Sess. 373, *reprinted in* 1976 U.S. Code Cong. & Ad.News 2897, 3439, 3802; H.R.Rep. No. 658, 94th Cong., 2d Sess. 311, *reprinted in* 1976 U.S.Code Cong. & Ad. News 2897, 3207; *see In re Tax Liabilities of John Does, Members of the Columbus Trade Exchange in the Years 1977 and 1978,* 671 F.2d 977, 979 (6th Cir.1982) (per curiam) (in enacting section 7609(f) Congress did not intend to impose stringent restrictions on IRS' investigative function, but merely sought to prevent indiscriminate

11. The district court relied on a passage from *United States v. Flagg, supra,* 634 F.2d at 1091, which in turn quoted the standard articulated in *United States v. Euge.*

12. Ordinarily, when there is an administrative interpretation of a statute, courts do not write on a clean slate. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965) (interpretation given statute by officers or agency charged with administration entitled to judicial deference). In this regard, appellees contend that *the instructions contained in the* IRS' Manual Supplement, *supra,* constitute an administrative interpretation of section 7609(f) and as such is entitled to judicial deference. The instructions that are cited by appellees,

however, do not speak to the situation presented here, in which the records needed to conduct an audit of the exchange also disclose the names of the members of the exchange. We are also unable to uncover any other portions of the Internal Revenue Manual that are relevant. *See* "John Doe" Summons, [2 Administration] Internal Revenue Manual (CCH) pt. 5894.2 (Nov. 22, 1978); "John Doe" Summons, [5 Administration] Internal Revenue Manual (CCH) pt. 9368.5 (Oct. 12, 1978); Issuance Procedures, [5 Administration] Internal Revenue Manual (CCH) pt. 9368.51 (Apr. 29, 1980); Service of John Doe Summons, [5 Administration] Internal Revenue Manual (CCH) pt. 9368.52 (Oct. 12, 1978).

exercise of John Doe summons power). There is no indication, however, that Congress intended to impose similar limitations on summonses other than the John Doe even though they might have a dual purpose.[13]

Our final inquiry under *Euge* is whether the summons is necessary for the effective performance of the IRS' statutory responsibilities to enforce the tax code. We conclude that it is. The district court found that the information sought under the summons was "relevant" and "necessary" for determining BSI's tax liabilities. Yet the district court's holding could leave the Government without the means to investigate those liabilities. As noted by appellants, a John Doe summons under subsection (f) cannot be issued to determine the tax liabilities of a known taxpayer. If, however, the summons is held unenforceable for failure to meet subsection (f) requirements, and a subsequently issued John Doe summons could not be served because it is issued to determine the tax liabilities of a known taxpayer, BSI's correct tax liabilities could become unverifiable.

Based on the foregoing, we conclude that the summons was issued for a legitimate purpose.

### B. Required Administrative Steps

Taxpayer alternatively contends under *United States v. Powell* that the IRS did not follow all the administrative steps required by the Internal Revenue Code (here the steps contained in section 7609(f)). Based on our reading of section 7609(f) and

of congressional intent leading to its passage, we find no merit to this contention.

We hold that the John Doe summons procedures of 26 U.S.C. § 7609(f) (1976) do not apply to the issuance of a summons which has the purpose of determining a known taxpayer's liabilities and produces the fallout or further effect of discovering information that would aid in identifying unnamed taxpayers and investigating their tax liabilities. In so holding, we emphasize that BSI is a taxpayer whose tax liabilities are under investigation and that its records may contain information pertaining to unnamed taxpayers which is relevant and necessary to that investigation. In the absence of an ongoing, particularized investigation of its tax liabilities, BSI would be entitled to challenge the summons as an attempted circumvention of section 7609(f). BSI would not, however, be able to make such a contention in this case.

We reverse the order of the district court and remand with instructions to enforce the summons in question.

---

**13.** In examining passages in the legislative history that define the John Doe summons or illustrate its use, we find none that is relevant to the situation presented here.

The legislative history variably defines the term "John Doe summons" as a summons where "the identity of the taxpayer is not known" or where "books and records relating to certain transactions are requested, although the name of the taxpayer involved is not specified." House Conference Rep. No. 1515, 94th Cong., 2d Sess. 485, *reprinted in* 1976 U.S.Code Cong. & Ad.News 4118, 4189; S.Rep. No. 938, 94th Cong., 2d Sess. 368, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439, 3797; H.R. Rep. No. 658, 94th Cong., 2d Sess. 306, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897,

3202. These definitions, however, do little more than to rephrase the statutory language; they have no applicability to the summons here, which does specify the taxpayer under investigation.

Similarly, the illustrations contained in the Committee Reports have no applicability: in each case, the summons that is issued is a John Doe summons, and the party from whom the names of the unidentified taxpayers are requested is not himself under investigation. *See* S.Rep. No. 938, 94th Cong., 2d Sess. 372–73, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3439, 3802; H.R.Rep. No. 658, 94th Cong., 2d Sess. 311, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3207.