**UNITED STATES of America and Edward H. Jackson, Revenue Agent, Internal Revenue Service, Petitioners-Appellants,**

v.

**Herbert GOTTLIEB and the Florida Trade Exchange, Inc., Respondents-Appellees.**

No. 82–5555.

United States Court of Appeals, Eleventh Circuit.

Aug. 22, 1983.

Glenn L. Archer, Michael L. Paup, Charles E. Brookhart, William A. Whitledge, Tax Div., Dept. of Justice, Washington, D.C., for petitioners-appellants.

Clifton Peter Rose, Williams & Jensen, Washington, D.C., for respondents-appellees.

Before JOHNSON and ANDERSON, Circuit Judges, and COLEMAN *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

This is another in a series of cases involving summonses issued by the Internal Revenue Service ("IRS") to obtain the names and addresses of the members of various barter exchanges during the course of audits of the exchanges. The district court refused to enforce the summons on the ground that the IRS had not complied with the special provisions for John Doe summonses set forth in 26 U.S.C.A. § 7609(f) (West Supp.1983).[1] We reverse.

The facts are simple and undisputed. Appellee Gottlieb is the founder and former president of the Florida Trade Exchange, Inc. ("FTE"), a barter exchange located in Jacksonville, Florida.[2] FTE, like other barter exchanges, acts as a clearinghouse for the exchange of goods and services. A member of the exchange who wants to obtain particular goods or services may call the exchange for referral to another member who provides those goods or services. When the "purchasing" member obtains the goods or services from the "selling" member, he or she presents an FTE membership card and signs an authorization form which is similar to a credit card purchase form. A copy of the authorization form is sent to FTE, which credits the selling member's account with the value of the goods or services provided and charges the same amount to the purchasing member's account. The selling member then can use his or her credits to obtain goods or services from other exchange members, while the purchasing member is obligated to provide goods or services to other members in an amount equal to the charges against his or her account. FTE keeps a record of all transactions and sends each exchange member a monthly statement. FTE derives its own income from the sale of memberships, annual dues, and a commission based on each member's trading volume.

Recently, the IRS concluded that the non-cash nature of barter exchange transactions warranted investigation to determine whether income from such transactions was being reported correctly. Consequently, the IRS initiated a Barter Exchange Project in 1979 which was "to identify and select returns in need of examination that are associated with organized barter ex-

---

* Honorable James P. Coleman, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. 26 U.S.C.A. § 7609(f) (West Supp.1983) provides:

Additional requirement in the case of a John Doe summons. Any summons described in subsection (c) which does not identify the person with respect to whose liability the summons is issued may be served only after a court proceeding in which the Secretary establishes that—

(1) the summons relates to the investigation of a particular person or ascertainable group or class of persons,

(2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and

(3) the information sought to be obtained from the examination of the record (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources.

2. After the commencement of the events which led to this litigation, Gottlieb sold FTE to Gilbert Clark who continued the business under the name Barter Systems of Jacksonville, Inc. Clark and his company are not parties to this action.

changes, including returns of barter exchanges, owners and operators, and members of such exchanges." Internal Revenue Service, U.S. Dep't of Treasury, Manual Supplement No. 45G–324. Barter Exchange Project Unreported Income Program (1980).

Pursuant to the Barter Exchange Project, the IRS initiated an audit of FTE's 1978 and 1979 tax returns. During the course of this audit, Revenue Agent Edward H. Jackson attempted to obtain the names and addresses of FTE's members. When FTE declined to give Jackson this information, the IRS issued and served a summons requiring Gottlieb, as president of FTE, to produce certain records, including the names and transaction records of FTE's members. Gottlieb and FTE refused to comply with the summons, and the IRS, in accord with the provisions of 26 U.S.C.A. § 7604 (West 1967 & Supp.1983), brought this action to enforce the summons in the U.S. District Court for the Middle District of Florida.

At a hearing conducted by the district court, Agent Jackson testified that the purpose of his investigation was to determine the correct tax liabilities of FTE for the taxable years in question. Jackson also testified that the names of FTE's members were essential to his investigation because he needed to compare individual transaction records with FTE's totals for each year and because he might have to verify some of FTE's records by contacting individual members of the exchange. In addition, Jackson stated that he had been instructed to give the names and addresses of exchange members who had a substantial number of bartering transactions to Revenue Agent Kenneth Black, the coordinator of the Barter Exchange Project in the Jacksonville area. Subsequently, Black testified that after the IRS obtained the list of FTE's members, as a result of Jackson's audit of FTE, the IRS would audit some of FTE's members.

The district court ruled against the IRS and refused to enforce the summons. The district court found that one of the purposes of the summons was to conduct a legitimate audit of the corporate taxpayer, FTE,[3] but the court also found that the institutional purpose of the IRS was "to obtain the names and addresses of the members of FTE so that [it] could select a sample of them for audit." The district court concluded that in light of the dual purpose for the summons the IRS could not merely proceed under the normal summons provisions of § 7602,[4] but rather that the IRS also had to comply with the John Doe summons procedures contained in 26 U.S.C.A. § 7609(f) (West Supp.1983) in order to protect the privacy interests of unknown

---

3. FTE expressly declined to argue that the audit of FTE was a mere subterfuge to avoid compliance with § 7609(f), conceding that the IRS intended to conduct a legitimate audit of FTE.

4. 26 U.S.C.A. § 7602(a) (West Supp.1983) provides:

(a) Authority to summon, etc.—For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—

(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;

(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and

(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry.

taxpayers whose records were being summoned from a third-party recordkeeper. Accordingly, the court held that the summons could not be enforced unless the IRS served written notice abandoning its present intention to use records obtained while auditing FTE in contemporaneous audits of unidentified members of FTE.[5] The court stated that if the IRS did not abandon its present intention to use the information obtained from the audit of FTE in contemporaneous audits of unidentified FTE members, then the court would require the IRS to comply with § 7609(f). The IRS appeals from the district court's order.

The IRS has broad powers to obtain information which is relevant to determining whether a taxpayer has complied with the internal revenue laws. Under 26 U.S.C.A. § 7602 (West Supp.1983), the IRS is authorized, *inter alia,* to summon the taxpayer or "any other person" to appear at a time and place designated by the IRS and to produce any "books, papers, records, or other data" which are relevant to determining the correct tax liability of any person.

When the IRS seeks to examine the records of a person which are in the hands of certain third parties, known as third-party recordkeepers,[6] the IRS must comply with the special procedures outlined in § 7609.[7] If the summons identifies the person whose tax liability is being investigated, then § 7609 requires the IRS to give notice to that person and sets forth a procedure by which the person may attempt to quash the summons. If the summons does not identify the person or persons whose tax liability is being investigated, then § 7609(f) provides that the summons may be served only after a court proceeding in which the IRS establishes that the summons relates to the investigation of a particular person or ascertainable group of persons, that there is a reasonable basis for believing that such person or persons may have failed to comply with an internal revenue law and that the information sought by the IRS is not readily available from other sources.[8]

■ The question presented in this case is whether the IRS must comply with the John Doe summons procedures of § 7609(f) when it issues a summons which has the

5. The district court's order required the IRS to abandon its present intention to audit FTE members, but did not preclude the IRS from following up on information obtained during the course of the audit of FTE. The court stated: "If, during the course of the investigation of FTE, the IRS determines that an audit of any or all members of the FTE is appropriate, then the court sees no impediment for the IRS to so proceed under a Section 7602 summons." Record on Appeal, vol. 1, at 77.

6. The term "third-party recordkeeper" is defined in § 7609(a)(3) to include banks, savings and loans, credit unions, consumer reporting agencies, persons "extending credit through the use of credit cards or similar devices," securities brokers, attorneys, accountants, and barter exchanges. Although barter exchanges were not explicitly included within the term third-party recordkeeper until a 1982 amendment to § 7609, *see* Pub.L. No. 97–248, § 311(b), 96 Stat. 324, 601 (1982), FTE clearly qualified as a third-party recordkeeper at the time the summons was issued because it extended credit through a device similar to a credit card.

7. Congress enacted § 7609 in 1976 in order to insure that the use of third-party summonses by the IRS did not "unreasonably infringe upon

the civil rights of taxpayers." H.R.Rep. No. 94–658, 94th Cong., 2d Sess. 307, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3203. Although several courts have held that the § 7609(f) procedures are not limited to summonses for records which are held by the statutorily defined class of third-party recordkeepers, *see, e.g., United States v. Mobil Corp.,* 543 F.Supp. 507, 516 (N.D.Tex.1981) (stating that "the 'John Doe' summons requirements are not limited to summonses for records which are held by 'third-party recordkeepers' "), we limit our discussion to the particular facts of this case where the summons is directed to a party which falls within the § 7609(a)(3) definition of third-party recordkeepers.

8. Obviously, the preferred protection for taxpayers' civil rights—advance notice to the taxpayer whose records are being investigated—is impossible when the taxpayer is unidentified. Thus, Congress adopted § 7609(f) as an alternate safeguard against the improper use of *John Doe* summonses, requiring the IRS "to show adequate grounds for serving the summons in an independent review process before a court before any such summons can be served." H.R.Rep. No. 94–658, 94th Cong., 2d Sess. 307, *reprinted in* 1976 U.S.Code Cong. & Ad.News 3203.

dual institutional purpose [9] of investigating the tax liabilities of a third-party record-keeper and investigating the tax liabilities of unidentified taxpayers whose records are in the third-party recordkeeper's possession.[10] Although this question is one of first impression in this circuit, two other U.S. Courts of Appeal recently have considered this precise issue in cases involving barter exchanges.

In *United States v. Barter Systems, Inc.*, 694 F.2d 163 (8th Cir.1982), the Eighth Circuit held that the IRS was not required to follow the § 7609(f) procedures when the IRS issued a summons to determine the correct liabilities of a barter exchange and also to investigate the tax liabilities of unidentified members of the exchange. The court noted that § 7609(f) applies only when the summons "does not identify the person with respect to whose liability the summons is issued," 26 U.S.C.A. § 7609(f), and that the summons in question did identify the person whose tax liability was in question, namely, the barter exchange. Further, the court found nothing in the statute or the legislative history that would "limit any fallout or ancillary benefit the IRS might receive in conducting an investigation of a named taxpayer that also discloses information relating to third parties whom the IRS might wish to audit." 694 F.2d at 168. Thus, in light of the "deferential standard of review to be applied in construing the IRS' summons authority," *id.* at 167 (citing *United States v. Euge*, 444 U.S. 707, 100 S.Ct. 874, 63 L.Ed.2d 141 (1980)), the Eighth Circuit held that the § 7609 procedures "do not apply to the issuance of a summons which has the purpose of determining a known taxpayer's liabilities and produces the fallout or further effect of discovering information that would aid in identifying unnamed taxpay-

ers and investigating their liabilities." *Id.* at 169.

The Sixth Circuit subsequently reached the opposite result in *United States v. Thompson*, 701 F.2d 1175 (6th Cir.1983). The Sixth Circuit assumed that the IRS was conducting a legitimate audit of the barter exchange's own tax liability, but concluded that the IRS had to follow the John Doe summons procedures "when the undisputed facts show that at the time of issuance it is also an intent of the IRS to discover the identity of an ascertainable group of persons whose potential liability is at issue." 701 F.2d at 1179. The court reasoned that when the IRS's institutional purpose was to investigate the tax liabilities of the members of the barter exchange as well as the exchange itself, the members of the exchange were unidentified persons "with respect to whose liability the summons is issued" within the literal language of § 7609(f). Accordingly, the court ruled that the IRS could not avoid the requirements of § 7609(f) "merely by identifying the record keeper as a person with respect to whose liability the summons is issued." *Id.* at 1179 n. 8.

The Sixth and Eighth Circuits both cited the legislative history of § 7609 to support their rulings, but neither court was able to cite an explicit expression of congressional intent on this issue. *Compare United States v. Barter Systems, Inc.*, 694 F.2d at 168–69 & n. 13, *with United States v. Thompson*, 701 F.2d at 1180. Further, our own review of the legislative history indicates that Congress did not address the problem of a summons issued for the dual purpose of investigating a third-party recordkeeper's own tax liability and investigating the tax liability of persons whose records are in the hands of that third-party recordkeeper. *See* H.R.Rep. No. 658 at 306, S.Rep. No. 938 at 368, House Cong.Rep. No.

---

**9.** The IRS argued in its brief that the district court erred when it found that the summons in this case was issued for a dual purpose. Our review of the record indicates that the district court's finding was not clearly erroneous.

**10.** We need not, and expressly do not, consider whether the IRS must comply with the notice

provisions of § 7609(a) when it issues a summons for the dual purpose of investigating the tax liabilities of a third-party recordkeeper and the tax liabilities of an *identified* taxpayer whose records are in the recordkeeper's possession.

1515 at 485, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2897, 3439 & 4118.

▮▮▮ In view of the congressional silence on this issue, we believe the district court erred when it refused to enforce the summons against FTE unless the IRS either renounced its intent to audit FTE's members or complied with the John Doe summons provisions of § 7609(f). The Supreme Court has consistently ruled that a deferential standard must be applied when construing congressional intent regarding the scope of the IRS's summons authority. As the Court stated in *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980), "if the summons authority claimed is necessary for the effective performance of congressionally imposed responsibilities to enforce the tax code, that authority should be upheld absent express statutory prohibition or substantial countervailing policies." *See also, e.g., United States v. Bisceglia,* 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975) (stating that "[s]ettled principles of statutory construction" require a broad construction of the IRS's summons authority "absent unambiguous directions from Congress"); *Donaldson v. United States,* 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971) (refusing to hold that the summons authority cannot be used whenever a civil investigation might lead to criminal prosecution because that might "stultify enforcement of federal law"); *United States v. Powell,* 379 U.S. 48, 54, 85 S.Ct. 248, 253, 13 L.Ed.2d 112 (1964) (rejecting a stringent interpretation of IRS summons authority "because it might seriously hamper the Commissioner in carrying out investigations"). Applying this deferential standard of review, we agree with the Eighth Circuit that the claimed authority is necessary for the effective enforcement of the tax laws, that there

clearly is no express statutory prohibition against the enforcement of the summons in question, and that neither the statute nor the legislative history identifies any substantial countervailing purposes which require us to deny enforcement of the summons. *See United States v. Barter Systems, Inc., supra.*

Our conclusion is supported by previous cases which, although not directly on point,[11] involved summonses issued for a dual purpose. In *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), for example, the Supreme Court ordered enforcement of an IRS summons which had been issued pursuant to both a civil and a criminal investigation. Subsequently, in *United States v. First National Bank of Dallas,* 635 F.2d 391 (5th Cir.1981),[12] the former Fifth Circuit upheld a summons which was issued both to determine the correctness of the taxpayer's return and to assemble research data for a "Taxpayer Compliance Measurement Program." The former Fifth Circuit expressly rejected the argument that a dual purpose summons was improper, stating that "[i]f a multi-purpose summons is issued pursuant to a legitimate purpose under section 7602, it is enforceable." *Id.* at 395 n. 4. *See also United States v. Flagg,* 634 F.2d 1087 (8th Cir.1980), *cert. denied,* 451 U.S. 909, 101 S.Ct. 1977, 68 L.Ed.2d 297 (1981).

Our holding finds further support when one considers the possible consequences of the contrary holding. If we follow the Sixth Circuit and adopt a rule that the § 7609(f) requirements must be satisfied in such dual purpose cases, and if a district court subsequently finds in a particular case that the requirements of § 7609(f) have not been met, then two consequences would be possible.[13] Namely, either the IRS *could*

---

11. The cases cited in the text implicate the rights of only one taxpayer; in contrast, the instant case implicates the rights not only of the taxpayer being audited, but also the unknown third parties. Thus, we do not consider the cases cited in the text as controlling.

12. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as

binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

13. The discussion in text presumes there would be only two possible consequences. However, there might be a third possibility, *i.e.,* permit the IRS to produce the records, notwithstand-

not obtain the records otherwise or the IRS could otherwise obtain the records. We reject out of hand the notion that the IRS could not obtain the records otherwise. Such a consequence would make it impossible to audit the third-party recordkeeper.[14] We are confident that Congress did not design § 7609(f) to immunize third-party recordkeepers from IRS audits, and the Supreme Court has repeatedly cautioned against narrow constructions of the summons authority that would undermine the effective enforcement of the tax laws. *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980); *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975); *Donaldson v. United States,* 400 U.S. 517, 536, 91 S.Ct. 534, 545, 27 L.Ed.2d 580 (1971); *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Thus, we are left with the second consequence noted above, that the IRS could otherwise obtain the records. In other words, the IRS must have an independent right to obtain the third-party recordkeeper's records for purposes of auditing the recordkeeper. Under such circumstances, where the IRS could obtain the records in any event without regard to whether the § 7609(f) requirements were met, it would be meaningless to impose the § 7609 requirements in the first instance.

We conclude, therefore, that Congress did not intend for § 7609(f) to apply in dual purpose cases such as this case. Although Congress in passing § 7609(f) obviously intended to provide a measure of protection in the summons process for unknown taxpayers, we agree with the Eighth Circuit when it said that "[t]here is no indication ... that Congress intended to impose similar restrictions on summonses other than the John Doe even though they might have

a dual purpose." *United States v. Barter Systems, Inc.,* 694 F.2d at 169. Further, such an interpretation of congressional intent is not unreasonable. When a taxpayer's records are in the hands of a third-party recordkeeper, there are numerous situations in which the taxpayer's records may be disclosed to other parties during the ordinary course of the recordkeeper's business. For example, taxpayers are not protected from disclosure of their records to the third-party recordkeeper's certified public accountants during an annual audit of the recordkeeper. Similarly, taxpayers whose records are in the possession of a bank/third-party recordkeeper risk disclosure of their records to federal regulatory agencies conducting routine inspections of the bank. Thus, absent a clear expression of congressional intent, we do not believe that § 7609(f) should be construed to protect unidentified taxpayers from the risk of a legitimate IRS audit of a third-party recordkeeper, regardless of whether the IRS intends to follow up on information obtained in that audit. An audit of the third-party recordkeeper is simply a foreseeable disclosure risk comparable to that involved in examinations by certified public accountants or bank regulatory agencies.

Finally, our holding does not leave unidentified third parties wholly without protection. A third-party recordkeeper, such as FTE in the instant case, can properly decline in the first instance to comply with the normal § 7602 summons, as was here issued, thus requiring the IRS to seek enforcement in the district court. At the enforcement hearing, the recordkeeper can argue that the summons was issued for the purpose of obtaining the third party records and that the audit of the recordkeeper itself was a mere pretext or subterfuge. The

---

ing its inability to satisfy the § 7609(f) requirements, but limit the use thereof as against unknown taxpayers. Because we know of no statutory mandate or other precedent to support such a limitation on use, because such a limitation would obviously hamper the effective enforcement of the tax laws with respect to such taxpayers, and in light of the general rule favoring a broad construction of the summons authority to permit the effective enforce-

ment of the tax laws, we doubt the viability of this third possibility.

**14.** The fact situation at issue assumes that the information would be necessary for the audit of the third-party recordkeeper. Were it not, an appropriate limiting order could be obtained in the district court. *United States v. Bisceglia,* 420 U.S. 146–47, 95 S.Ct. 918–19.

recordkeeper also can argue that the summons fails to meet the good faith requirements established in *United States v. Powell,* 379 U.S. at 57–58, 85 S.Ct. at 254–55. *United States v. Barter Systems, Inc., supra* lists these requirements as follows:

> (1) the investigation is being conducted pursuant to a legitimate purpose; (2) the inquiry is relevant to that purpose; (3) the IRS does not already possess the information sought; and (4) the administrative steps required by the Internal Revenue Code have been followed.

694 F.2d at 167. *See also United States v. LaSalle National Bank,* 437 U.S. 298, 318, 98 S.Ct. 2357, 2368, 57 L.Ed.2d 221 (1978).

In summary, the precedent established by Supreme Court cases [15] points to a broad interpretation of the summons authority to permit the effective performance of IRS's tax collecting responsibilities so long as there are no unambiguous directions to the contrary from Congress or substantial countervailing policies. The foregoing discussion reveals that there has been no unambiguous congressional direction precluding issuance of the instant summons, that there is no substantial countervailing policy, and finally that imposing the § 7609(f) requirements on such dual purpose summonses would pose some threat to the effective performance of the tax collecting duties. Accordingly, we conclude that the IRS need not comply with the § 7609(f) requirements in order to issue and obtain enforcement of such dual purpose summonses.

The judgment of the district court is reversed, and the case is remanded with instructions to enforce the summons in question.

REVERSED and REMANDED.

---

**15.** *United States v. Euge, supra; United States v. Bisceglia, supra; Donaldson v. United States, supra; United States v. Powell, supra.*