UNITED STATES and Joel Lewis, Revenue Agent, Internal Revenue Service, Petitioners-Appellees,

v.

TIFFANY FINE ARTS, INC. and its subsidiaries, including World Medical Marketing Corporation and World Video Corp., Respondents-Appellants.

No. 1006, Docket 82–6336.

United States Court of Appeals, Second Circuit.

Argued March 28, 1983.

Decided Sept. 13, 1983.

---

David M. Rubin, New York City (Michael D. Savage, Gersten, Savage & Kaplowitz, New York City, of counsel), for respondents-appellants.

Jamie Vincent Gregg, New York City, Asst. U.S. Atty., S.D.N.Y. (John S. Martin, Jr., U.S. Atty., S.D.N.Y., David M. Jones, Asst. U.S. Atty., Thomas D. Warren, Asst. U.S. Atty., of counsel), for petitioners-appellees.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Tiffany Fine Arts, Inc. and two subsidiaries, World Medical Marketing Corp. and World Video Corp., (collectively referred to as Tiffany) appeal from an order of the District Court for the Southern District of New York (Vincent L. Broderick, *Judge*), enforcing four Internal Revenue Service administrative summonses. Tiffany's principal contention on appeal is that before issuing the summonses the IRS was required to comply with the "John Doe" provisions of 26 U.S.C. § 7609(f)(1976). In addition, Tiffany argues that Judge Broderick abused his discretion by refusing to hold a hearing regarding the purpose underlying the summonses.

We affirm.

## BACKGROUND

Tiffany Fine Arts, Inc. is a holding company for various subsidiaries engaged in promoting tax shelters. Sometime before August 28, 1981, IRS revenue agent Joel Lewis asked Tiffany for a list of names,

addresses, and social security numbers of the licensees of a product known as the "Pedi-Pulsor", which World Medical was marketing. When Tiffany refused, Lewis issued four summonses on October 6, 1981.

Each summons identified "Tiffany Fine Arts, Inc. and Subsidiaries" as the subjects of an IRS investigation. Two were addressed to Tiffany Fine Arts, Inc. in care of Steven Hofstein, President, and Janine Martinelli, Secretary and Treasurer, and directed them to appear before Lewis to give testimony and to produce the following documents:

(1) All books, papers, records and other data pertaining to the operation of Tiffany Fine Arts Inc. and subsidiaries (including World Medical Marketing Corp.) for the periods ending October 31, 1979 and October 31, 1980, including but not limited to the following specific records: general ledger, sales journal, purchase book, cash receipts book, cash disbursement book, cancelled checks and bank statements, workpapers, sales contracts, and purchase invoices for the above described periods.

(2) A list of the names, addresses, social security and employer identification numbers for all individuals, partnerships, estates, trusts and corporations who acquired: Pedi-Pulsor distributorships from World Medical Marketing Corporation Inc., World Medical Marketing Corporation, World Video Corporation or any other subsidiary corporation of Tiffany Fine Arts Inc.

(3) A list of the names, addresses, social security and employer identification numbers for all individuals, partnerships, estates, trusts and corporations who acquired lithographs from Tiffany Fine Arts Inc.

(4) A list of the names, addresses, social security and employer identification numbers for all individuals, partnerships, estates, trusts and corporations who acquired any asset, distributorship, etc. from Tiffany Fine Arts Inc., World Medical Marketing Corporation, World Video

Corporation or any other subsidiary corporation of Tiffany Fine Arts Inc.

The remaining two summonses were addressed to World Medical Marketing Corp., in care of Peter Rosenthal, President, and Janine Martinelli, Secretary and Treasurer, and directed them to give testimony and to produce the following documents:

(1) All books, papers, and other data pertaining to the operation of World Medical Marketing Corporation (a subsidiary of Tiffany Fine Arts Inc.), for the periods ending October 31, 1979 and October 31, 1980, including but not limited to the following specific records: general ledger, sales journal, purchase book, cash receipts book, cash disbursement book, cancelled checks and bank statements, workpapers, sales contracts and purchase invoices for the above described periods.

(2) A list of the names, addresses, social security and employer identification numbers for all individuals, partnerships, estates, trusts and corporations who acquired Pedi-Pulsor distributorships from World Medical Marketing Corporation. Also copies of the application for license fact sheets signed by each licensee.

When Tiffany refused to comply with the summonses, the IRS initiated this enforcement proceeding under 26 U.S.C. §§ 7402(b) and 7604 with an order to show cause and petition, supported by an affidavit of agent Lewis which briefly explained:

* * * I am conducting an investigation, one purpose of which is to ascertain the correctness of the consolidated corporate income tax returns filed by [Tiffany] for the fiscal years ending October 31, 1979, and October 31, 1980. One aspect of my investigation into the correctness of Tiffany's consolidated corporate income tax returns concerns possible underreporting of income received and questionable business deductions claimed by [Tiffany].

In opposition, Tiffany's president, Steven R. Hofstein, asserted, among other things, that the "true motive" of the IRS was "to ascertain and audit the tax returns of [Tiffany's] clients, not [Tiffany]". He emphasized that the IRS was unwilling to accept

redacted records or to limit its examination to a random check of Tiffany's clients. He also noted that the summonses requested information concerning purchasers of lithographs, whom the IRS had singled out for special audit. Since Tiffany had never engaged in the sale of lithographs, Hofstein argued that this confirmed that the IRS was "on a blatant fishing expedition which cannot be condoned pursuant to I.R.C. § 7602." In an accompanying memorandum of law, Tiffany argued that the IRS could obtain the third party information it desired only by satisfying the requirements for a "John Doe" summons set forth in § 7609(f).

By a supplemental affidavit agent Lewis elaborated on the reasons underlying his investigation of Tiffany. He suspected that Tiffany "may have underreported its gross receipts because certain recourse and non-recourse notes provided by the licensees of a product distributed by World Medical did not appear to be included in World Medical's income." To verify the accuracy of Tiffany's returns, he "would have to examine the original books of entry and the underlying licensing agreements to match the income reflected by those agreements to the income reported by World Medical." Thus, asserted Lewis, Tiffany's offer to produce only certain redacted records was unacceptable.

As to the lithograph issue, Lewis explained that "I had information from another source that a company called 'Tiffany,' which did business in Florida, was in the business of selling lithographs." When he initially inquired whether the two companies were one and the same, Tiffany's attorney "would neither confirm nor deny that the Tiffany herein sold lithographs." Thus, he requested records relating to lithographs "out of an abundance of caution".

With respect to Tiffany's charges concerning the motivation of the IRS, however, Lewis conceded:

that by examining the licensing agreements, I would also be able to identify individuals who have participated in what appears to be an abusive tax shelter. It is certainly possible that once the individuals are identified further inquiry will be made into whether they have correctly reported their income tax liabilities.

After oral argument, Judge Broderick held that the IRS had made a sufficient showing that its "interest is in an audit of the consolidated returns of Tiffany." He therefore ruled that the IRS was authorized to issue the four summonses under 26 U.S.C. § 7602, without additionally having to satisfy the requirements of § 7609(f). He also ruled that no evidentiary hearing was necessary since Tiffany's "hypothesis" that the IRS's real motivation was solely to audit Tiffany's clients was rebutted by a "clear factual statement" that the IRS was legitimately interested in Tiffany's own tax liabilities.

On appeal, the parties repeat essentially the same arguments they advanced below. Based on the broad sweep of the four summonses, which followed the IRS's initial request for third party information, Tiffany argues that the summonses were, at best, issued for the dual purpose of investigating both it and its clients and, at worst, purely pretextual. In either event, it contends, the IRS was required to comply with § 7609(f) since a "substantial objective" of the summonses was the identification of unnamed taxpayers. At the very least, Tiffany claims, the district judge should have ordered a hearing to determine whether the IRS was proceeding in good faith.

The IRS, on the other hand, maintains that it is conducting an ongoing, particularized investigation of Tiffany. While it does not concede that the summonses were issued for a dual purpose, it argues that its legitimate concerns with Tiffany make compliance with § 7609(f) unnecessary, regardless of whether it may also be concerned with Tiffany's customers. Finally, the IRS contends that no hearing was required in the district court.

## DISCUSSION

To place these competing claims about the IRS's administrative summonses in context, we begin by briefly surveying the backdrop of statutory and case law against

which § 7609(f) was enacted in 1976. Section 7601 of the 1954 Code generally authorizes the IRS to "inquire after and concerning all persons * * * who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed." Section 7602 empowers the IRS "[t]o examine any books, papers, records, or other data which may be relevant or material" to an inquiry into "the correctness of any return". Section 7604(b) permits the IRS to petition the district court to enforce its administrative summonses.

▆▆▆ The general criteria for judicial enforcement of any IRS summons were established by the Supreme Court in *Reisman v. Caplin,* 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), and *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). As this court recently summarized in *In re Tax Liabilities of John Does,* 688 F.2d 144, 147–48 (2d Cir.1982):

> In general, to obtain judicial enforcement of a summons, the Government is required * * * to make a prima facie showing that: (1) its investigation was being conducted for a legitimate purpose; (2) its inquiry may be relevant to that purpose; (3) the information sought is not already within the Government's possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. Once that showing is made, the burden shifts to the summoned party who may challenge summons enforcement on any " 'appropriate * * * ground,' " * * * or otherwise prove that enforcement would constitute an abuse of the court's process.

(citations and footnotes omitted).

Within this statutory framework, the Supreme Court ruled in *United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975), that the IRS was authorized under the broad language of §§ 7601 and 7602 to issue a so-called "John Doe" summons, one that seeks books and records of a transaction without naming the taxpayer involved. *Bisceglia* involved an administrative summons which the IRS issued to a bank to discover the identity of a customer who had deposited 400 deteriorated $100 bills. Given the suspicious nature of the transaction, a majority of the Court had little difficulty approving this use of the summons power. While the *Bisceglia* majority apparently recognized that its expansive interpretation of §§ 7601 and 7602 created a risk that the IRS might attempt "to conduct 'fishing expeditions' into the private affairs" of unnamed taxpayers, 420 U.S. at 150, 95 S.Ct. at 921, it reasoned that by creating the enforcement proceeding mechanism Congress had intended to place the federal courts between the IRS and the person summoned, and that the courts could contain this threat by narrowing the scope of or refusing to enforce abusive summonses. *Id.* at 146, 95 S.Ct. at 919.

Troubled by the implications of *Bisceglia,* Congress enacted § 7609(f) as part of the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1205(a), 90 Stat. 1520, 1701–02, to prevent indiscriminate use of the John Doe summons. In doing so Congress attempted to strike a balance between the legitimate needs of the IRS and the privacy interests of unidentified third parties. For example, the house committee which drafted the provision observed that "[t]he use of the administrative summons * * * is a necessary tool for the IRS in conducting many legitimate investigations * * * [but] should not unreasonably infringe upon the civil rights of taxpayers, including the right to privacy." H.R.Rep. No. 94–658, 94th Cong., 2d Sess. 307, *reprinted in* [1976] U.S.Code Cong. & Ad. News 2897, 3203. The same report later noted that "[w]hile * * * it is important to preserve the John Doe summons as an investigative tool which may be used in appropriate circumstances * * * the committee does not intend that the John Doe summons is to be available for purposes of enabling the Service to engage in a possible 'fishing expedition.' " *Id.* at 3207.

To accommodate these conflicting interests, the committee report anticipated "that when the Service does seek court authorization to serve [a] John Doe summons, it will

have specific facts concerning a specific situation to present to the court." *Id.* At the same time, however, the committee expressly did "not intend to impose an undue burden on the Service in connection with obtaining a court authorization to serve this type of summons. * * * It is enough for the Service to reveal to the court evidence that a transaction has occurred, and that the transaction * * * is of such a nature as to be reasonably suggestive of the possibility that the correct tax liability with respect to that transaction may not have been reported * * *." *Id.*

This balance is reflected in the statutory scheme Congress established. Section 7609(f) sets out the modest standards the IRS must satisfy to serve a John Doe summons, defined as one "which does not identify the person with respect to whose liability the summons is issued", and it requires advance approval by the court. Section 7609(h) permits the district court to approve the John Doe summons in an *ex parte* proceeding which "shall be * * * [determined] solely on the petition and supporting affidavits."

With this background in mind, we turn to the central issue on this appeal: whether an IRS summons issued under § 7602 in connection with the investigation of a named taxpayer, which might also facilitate the investigation of unnamed taxpayers, is subject to the requirements of § 7609(f). While this court has not previously addressed this issue, the Sixth, Eighth and Eleventh Circuits recently have. *United States v. Thompson,* 701 F.2d 1175 (6th Cir. 1983); *United States v. Barter Systems, Inc.,* 694 F.2d 163 (8th Cir.1982); *United States v. Gottlieb,* 712 F.2d 1363 (11th Cir. 1983).

In *Barter Systems,* the IRS issued a summons to an organized barter exchange under § 7602, requesting, among other things, the names and account numbers of the exchange's members, as well as information concerning transactions in which those members had engaged. The Eighth Circuit held:

[T]he John Doe summons procedures of 26 U.S.C. § 7609(f) (1976) do not apply to the issuance of a summons which has the purpose of determining a known taxpayer's liabilities and produces the fallout or further effect of discovering information that would aid in identifying unnamed taxpayers and investigating their tax liabilities.

694 F.2d at 169. Relying on *United States v. Euge,* 444 U.S. 707, 711, 100 S.Ct. 874, 878, 63 L.Ed.2d 141 (1980), for the proposition that the IRS's summons authority "should be upheld [under § 7602] absent express statutory prohibition or substantial countervailing policies", the court in *Barter Systems* emphasized that § 7609(f), by its express terms, only applies "in the case of a John Doe summons" which "does not identify the person with respect to whose liability the summons is issued." 694 F.2d at 167–68. The court therefore determined that the summons in question "was not a John Doe summons" since it identified the exchange as a target of an IRS investigation. *Id.* at 168. Looking to the legislative history of § 7609(f), the court found no indication that Congress intended the John Doe procedures to apply to any summons that identified a particular taxpayer even though it might also aid in the investigation of unnamed third parties. *Id.* at 168–69. *Accord United States v. Constantinides,* 1981–1 U.S.T.C. (CCH) ¶ 9317 (D.Md.1980).

The Eleventh Circuit reached essentially the same conclusion in *United States v. Gottlieb,* which also involved a barter exchange. Emphasizing "that a deferential standard must be applied when construing congressional intent regarding the scope of the IRS's summons authority", the court agree[d] with the Eighth Circuit that the claimed authority is necessary for the effective enforcement of the tax laws, that there clearly is no express statutory prohibition against the enforcement of the summons in question, and that neither the statute nor the legislative history identifies any substantial countervailing

purposes which require us to deny enforcement of the summons.

712 F.2d at 1369.

The Sixth Circuit, however, reached the opposite conclusion in *United States v. Thompson,* another barter exchange case. As in both *Barter Systems* and *Gottlieb,* the facts in *Thompson* suggested that the IRS had a dual purpose in mind when it issued the summons in question. Because the summons did not identify each "person with respect to whose liability the summons is issued", however, the court concluded that "in a most literal sense the language of § 7609(f) is triggered here." 701 F.2d at 1180.

■ We think the position taken by the Eighth and Eleventh Circuits represents the better view. A formidable line of Supreme Court cases establish that the summons power of the IRS should be construed broadly. *United States v. Euge,* 444 U.S. at 714–18, 100 S.Ct. at 879–81; *United States v. Bisceglia,* 420 U.S. at 150, 95 S.Ct. at 921; *Donaldson v. United States,* 400 U.S. 517, 535, 91 S.Ct. 534, 544, 27 L.Ed.2d 580 (1971); *United States v. Powell,* 379 U.S. at 53–54, 85 S.Ct. at 252–53; *United States v. Chamberlain,* 219 U.S. 250, 269, 31 S.Ct. 155, 162, 55 L.Ed. 204 (1911). *See also United States v. Arthur Young & Co.,* 677 F.2d 211, 218 (2d Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1180, 75 L.Ed.2d 429 (1983). In the absence of any explicit indication in the language or legislative history of § 7609(f) that the John Doe procedures should apply to a dual purpose summons, we therefore cannot accept the narrow, literal construction adopted by the Sixth Circuit and urged by Tiffany here. As far as we can determine, the drafters of § 7609(f) addressed only a situation, like *Bisceglia,* in which the IRS issued a summons to an identifiable party in whom it had no interest in order to investigate the potential tax liabilities of unnamed third parties. We agree with the Eighth and Eleventh Circuits that § 7609(f) should be limited to that context.

There is further, albeit indirect, support for this conclusion in the legislative history. As the house report indicates, Congress sought to balance its concern with protecting the privacy interests of unnamed taxpayers against its concern with not imposing undue burdens on the IRS. Adopting Tiffany's position could easily destroy the delicate balance struck by § 7609(f), because virtually any IRS summons is likely to uncover some information that could be used to identify or investigate third party taxpayers, and if every recipient of a summons issued under § 7602 could demand that the IRS satisfy the requirements of § 7609(f), the IRS would be shouldered with significantly greater administrative burdens than Congress intended.

■ As noted by the Eleventh Circuit in *Gottlieb,* 712 F.2d at 1369, Tiffany's position is also inconsistent with two lines of analogous cases involving dual purpose summonses. The Supreme Court's decisions in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), and *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), establish that even if the primary purpose of the issuing agent is to investigate criminal conduct, a summons issued under § 7602 is enforceable, provided that the IRS has not abandoned in an institutional sense the pursuit of civil tax determination or collection. *See also United States v. Morgan Guaranty Trust Co.,* 572 F.2d 36 (2d Cir.), *cert. denied,* 439 U.S. 822, 99 S.Ct. 89, 58 L.Ed.2d 114 (1978). Similarly, numerous courts have held that an IRS summons issued primarily to obtain research data is enforceable as long as it is also supported by a civil tax determination purpose. *E.g., United States v. First National Bank in Dallas,* 635 F.2d 391, 395–96 (5th Cir.), *cert. denied,* 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981); *United States v. Pittsburgh Trade Exchange Inc.,* 644 F.2d 302, 307–08 (3rd Cir.1981); *United States v. Flagg,* 634 F.2d 1087, 1091–92 (8th Cir. 1980), *cert. denied,* 451 U.S. 909, 101 S.Ct. 1977, 68 L.Ed.2d 297 (1981) *United States v. Island Trade Exchange, Inc.,* 535 F.Supp. 993, 997 (E.D.N.Y.1982). Thus, even assuming that the summonses in this case were issued to Tiffany partly for the purpose of

investigating Tiffany's customers, the existence of that purpose—regardless of how it is characterized—does not invalidate the summonses because the IRS is pursuing the civil tax liability of a named taxpayer, Tiffany.

The only remaining issue is whether Judge Broderick abused his discretion in declining to hold a hearing to determine whether the IRS was legitimately concerned with Tiffany when it issued the four summonses. We hold that no hearing was necessary. Unless a taxpayer opposing enforcement of a summons makes a "substantial preliminary showing" of an alleged abuse, neither an evidentiary hearing nor limited discovery need be ordered by the district court. *United States v. Morgan Guaranty Trust Co.*, 572 F.2d at 42–43 n. 9; see *United States v. Noall*, 587 F.2d 123, 127 (2d Cir.1978), *cert. denied*, 441 U.S. 923, 99 S.Ct. 2031, 60 L.Ed.2d 396 (1979). The Hofstein affidavit did raise some question as to whether the IRS was "primarily" interested in Tiffany or in its customers. But we have concluded that the only relevant question is whether the IRS was legitimately conducting an ongoing investigation of Tiffany's tax liability, and the allegations in the Hofstein affidavit do not amount to the type of "substantial preliminary showing" that would require further inquiry on that issue. Since the affidavits by agent Lewis established an ongoing IRS investigation of Tiffany sufficient to support the summonses issued here without compliance with the John Doe provisions of § 7609(f), Judge Broderick was well within his discretion in declining to order an evidentiary hearing.

Affirmed.